[L. A. No. 28147.   In Bank.   Sept. 8, 1965.]

CITY OF BEAUMONT, Plaintiff and Appellant, v. BEAU-
MONT IRRIGATION DISTRICT, Defendant and Re-
spondent.

Redwine & Sherrill, Justin M. McCarthy and David N. M. Berk for Plaintiff and Appellant.

Thompson & Colegate, James M. Wortz and Franz R. Sachse for Defendant and Respondent.

Kronick, Moskovitz & Vanderlaan, Stanley W. Kronick and Edward J. Tiedemann as Amici Curiae on behalf of Defendant and Respondent.

MOSK, J.—Plaintiff, an incorporated city in Riverside County, brought an action to condemn all the property of the Beaumont Irrigation District. The district demurred to the complaint on the grounds that it did not state a cause of action and that the court had no jurisdiction of the subject-matter. The court sustained the demurrer, the city failed to amend the complaint, and judgment was entered dismissing the action. The city appeals from the judgment. The facts alleged in the complaint are deemed to be true for our purposes. (*Isrin* v. *Superior Court* (1965) *ante,* p. 153 [45 Cal.Rptr. 320, 403 P.2d 728].)

The complaint alleges the following: the district operates a water system dedicated to public use for irrigation and domestic purposes. It supplies water both to the city and to areas outside the city, but the only water supply available to the city is that possessed by the district. More than one-half of all the persons entitled to receive water from the district live in the city, and they provide over one-half the district's income. The purpose of this action is to obtain the substitution of the city as the public entity to conduct all the operations and functions now administered by the district. As presently constituted, a majority of the district's board of

directors represent areas outside the city; and this majority, by its ability to dispense the sole water supply of the city, is able to control the growth of the city for the benefit of the district. Public convenience and necessity require the taking of the fee simple interest and all lesser interests owned by the district for the purpose of insuring an adequate domestic water supply for the present and future needs of the city's inhabitants. As between the city and the district, the city will put the water system to a more necessary public use than will the district. The city intends to acquire the district's property subject to all the obligations of the district, including the obligation to continue to supply water to those presently entitled to receive it and to assume payment of the district's lawful obligations. Thus conclude the allegations of the complaint.

Whether the city may exercise its power of eminent domain in order to condemn the property of the district depends upon the construction to be given to the provisions of the Code of Civil Procedure relating to the power of eminent domain.

Several fundamental propositions should be noted at the outset. ■ A municipality may exercise the power of eminent domain only if the Legislature has authorized it to do so by statute, either expressly or by necessary implication. (*People* v. *Superior Court* (1937) 10 Cal.2d 288, 296 [73 P.2d 1221].) ■ The Legislature has conferred upon municipalities the power to condemn water, water rights and other property for the purpose of supplying water to their inhabitants. (Gov. Code, § 38730.) ■ Cities may also supply water to persons outside municipal boundaries and may condemn property outside such boundaries for the purpose of obtaining a water supply. (Cal. Const., art. XI, § 19; *City of North Sacramento* v. *Citizens Utilities Co.* (1961) 192 Cal.App.2d 482, 487 [13 Cal.Rptr. 538].) The power of eminent domain has been exercised in order to acquire the property of private persons and corporations supplying water to a city (see, e.g., *City of North Sacramento* v. *Citizens Utilities Co.* (1961) *supra*, 192 Cal.App.2d 482), but so far as appears it has never been employed to take property belonging to another governmental subdivision or agency where the property sought was already being used for the purpose of supplying water.

■ Subdivision 3 of Code of Civil Procedure section 1241

provides that property already appropriated to some public use may be taken if the purpose to which it is to be applied is a more necessary public use. However, the last sentence of subdivision 3 adds this significant qualification: "But *private property appropriated to the use of any* county, city and county, incorporated city or town, or municipal water district, or *irrigation district,* or transit district, or rapid transit district, or public utility district, or water district, *may not be taken by any other* county, city and county, *incorporated city* or town, or municipal [water] district, or irrigation district, or transit district, or rapid transit district, or public utility district, or water district, *while such property is so appropriated and used for the public purposes for which it has been so appropriated.*" (Italics added.) The district claims that the quoted portion of subdivision 3 of section 1241 renders its property immune from condemnation by the city. The city contends, on the other hand, that the property involved in this proceeding does not come within the immunity provision and may be taken under the first portion of subdivision 3 authorizing condemnation of property already devoted to a public use, if the city can show a more necessary use.[1]

The instant cause has been preceded to this court by only one case in which a public entity named in the portion of section 1241 quoted above attempted to condemn the property owned and used by another of the entities specified. In *County of Marin* v. *Superior Court* (1960) 53 Cal.2d 633 [2 Cal. Rptr. 758, 349 P.2d 526], a municipal water district brought an action to condemn two roads under the jurisdiction of Marin County, and it was held that under sections 1240[2] and

---

[1]The power of eminent domain has been employed by governmental entities not named in the immunity provision to take property owned by another public entity where the condemning authority has shown that it will put the property to a more necessary public use. (*Barry* v. *Department of Public Works* (1962) 199 Cal.App.2d 359, 363-364 [18 Cal.Rptr. 637]; *People* v. *City of Los Angeles* (1960) 179 Cal.App.2d 558, 564-565 [4 Cal.Rptr. 531].)

[2]Section 1240 of the Code of Civil Procedure specifies the type of property which may be taken in eminent domain. The last sentence of subdivision 3 of the section, which contains language similar but not identical to the portion of subdivision 3 of section 1241 quoted above, provides as follows: "But property appropriated to the use of any county, city and county, incorporated city or town, or municipal water district, may not be taken by any other county, city and county, incorporated city or town, or municipal water district, while such property is so appropriated and used for the public purposes for which it has been so appropriated."

1241 of the Code of Civil Procedure the county's roads are immune from condemnation by the district. The opinion states, "County roads are clearly property appropriated to a public use. The condemnation of such property is, therefore, clearly governed by the provisions of the third subsections of sections 1240 and 1241, Code of Civil Procedure, quoted above. Under the last sentences of each of the said subsections it appears that the Legislature has decided to exempt from condemnation property previously appropriated and used by certain public entities, including counties. By express statutory provision property appropriated to the use of a county may not be taken by a municipal water district. A more clear or positive legislative mandate would be difficult to envision." (*Id.* at p. 637.) Although the entities involved in the present case are a city and an irrigation district, the holding in the *Marin* case is applicable since section 1241 includes them among the exempt entities.[3]

The city seeks to avoid the application of the immunity clause of section 1241 to the present case by contending that the use of the words "private property" at the beginning of the clause indicates that the exemption is not intended to apply to irrigation districts, since all property of an irrigation district is public property. It is suggested that the words "private property appropriated to the use of" a public agency refer only to property which though devoted to the use of the public is owned by a private person or corporation, such as a public utility. In at least one case it has been held that the immunity conferred by sections 1240 and 1241 is applicable to property of this type, but there is a dictum in the opinion to the effect that the statutory immunity also applies to property owned by the governmental entities named in the provision. (*Mono Power Co.* v. *City of Los Angeles* (9th Cir. 1922) 284 F.784, 795.)

It appears from a reading of the sections of the Code of Civil Procedure relating to eminent domain that the words "private property" as used in section 1241 do not have the meaning attributed to them by the city. On the contrary, the

---

[3]The city contends that the *Marin* case is distinguishable because it involved property of a county sought to be condemned by a municipal water district and subdivision 3 of section 1240 renders the property of these entities immune from condemnation but does not mention irrigation districts. However, as is shown by the quotation above, the opinion relied on *both* sections 1241 and 1240 and states that under each of them the Legislature has exempted the property of certain entities from condemnation.

term is used to refer to property owned by public agencies as well as that owned by private persons or corporations. For example, section 1237 defines eminent domain as "the right of the people or government to take *private property* for public use." (Italics added.) Obviously, if the words "private property" as used in this section were to be given their ordinary meaning, the taking of property owned by a public agency would not come within the definition. (See fn. 1, *ante,* for two recent cases in which public property owned by one public entity has been condemned by another.) Also pertinent is section 1240, which enumerates the classes of property that may be taken: "The *private property* which may be taken under this title includes: 1. All real property belonging to any person. 2. Lands belonging to the State. . . . 3. Property appropriated to public use. . . . 4. Property appropriated to any public use by any irrigation district, may be taken by another irrigation district. . . ." (Italics added.) There is no reason to assume that the words "private property" have a more limited meaning in section 1241 than in the sections quoted above.

*Mono Power Co.* v. *City of Los Angeles* (9th Cir. 1922) *supra,* 284 F. 784, sheds some light on the background and purpose underlying the provision in question. In that case the City of Los Angeles attempted to condemn the property of a private corporation which had previously devoted it to the use of other governmental entities, and it was held that sections 1240 and 1241 prohibited the taking. There is a dictum in the case to the effect that the immunity conferred by those sections applies to property owned either by public entities or by private persons. The court stated that in 1913, when sections 1240 and 1241 were amended by the Legislature to insert the immunity provisions, "The bills were referred to the Judiciary Committee, where it was a question whether they might not permit the condemnation by one county, city and county, etc. of property *owned* by or lawfully appropriated to the use of another county, city and county, etc. . . . [W]e must hold that it was the purpose of the Legislature to provide that property of a private corporation, *as well as property of a municipal corporation,* appropriated to the public use in one county, may not be appropriated to a public use by any other county, city and county, while such property is so appropriated and used." (Italics added.) (*Id.* at p. 795.)

The city also asserts that it has a paramount right to ad-

minister the water system because it is an entity with powers broader than those of the district.[4] We find this to be irrelevant here, however, in view of the clear language of subdivision 3 of section 1241.

And finally it is argued that the exercise of the power of eminent domain should be permitted in the present situation as a policy matter because section 106 of the Water Code declares that the use of water for domestic purposes is the highest use to which it can be devoted and the city's basic purpose is to provide water for domestic uses, whereas the district's essential function is to supply water for irrigation.

█ The city's reliance upon the mandate of section 106 of the Water Code is misplaced here, for the section's application is binding upon every California agency, the district as well as the city.[5] There is no allegation that the district has denied water for domestic purposes to the city in the past or that it will do so in the future, and we cannot, of course, assume that the command of the statute will be disobeyed. There is a statutory presumption that officials will comply with the law. (Code Civ. Proc., § 1963, subd. 15.)

█ We conclude that the legislative language in subdivision 3 of section 1241 of the Code of Civil Procedure is unequivocal. Under these circumstances the city has not stated a cause of action.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

---

[4]Reliance is placed on the case of *People* ex rel. *City of Downey* v. *Downey County Water Dist.* (1962) 202 Cal.App.2d 786 [21 Cal.Rptr. 370], which involved the annexation of the Downey County Water District by the City of Downey and whether this resulted in a dissolution of the district by operation of law. The court held that a merger resulted because the water district was a public corporation of more limited powers than the city and the city had broader powers in the field of water supply. In the course of the opinion the court contrasted in some detail the limited functions performed by the district with the general and broad powers enjoyed by the city. (*Id.* at pp. 794-796.)

[5]The district concedes it is bound by the principle declared in section 106 of the Water Code. Thus we need not discuss some equivocal language in *Metropolitan Water Dist.* v. *Marquardt* (1963) 59 Cal.2d 159, 184-185 [28 Cal.Rptr. 724, 379 P.2d 28].