[Civ. No. 41396. First Dist., Div. Three. Aug. 10, 1978.]

GOLDEN GATE BRIDGE, HIGHWAY AND TRANSPORTATION DISTRICT, Plaintiff and Respondent, v. DOMENIC MUZZI et al., Defendants and Appellants.

**Counsel**

Fitzgerald, Berg & Edgar, Fitzgerald & Edgar, Herman H. Fitzgerald, William R. Edgar, Hudak & Muzzi and Vincent A. Muzzi for Defendants and Appellants.

Hanson, Bridgett, Marcus, Milne & Vlahos, John J. Vlahos and Stephen B. Peck for Plaintiff and Respondent.

## OPINION

SCOTT, J.—Appellants, owners of a large tract of property in Marin County, appeal from a judgment in condemnation after the jury determined the value of their property to be $600,000. Respondent sought to condemn the property in connection with the construction of a ferry terminal in Larkspur.

The subject property consists of between 589 and 600 acres in the Town of Corte Madera; 369-380 acres are tidelands (submerged) and the remaining 199-220 acres lie behind dikes. Of the area behind the dikes about 60 acres are filled; the rest is low and marshy. The property is a short distance from the site of the Larkspur ferry terminal.

Appellants contend that respondent's purpose in condemning their property was unauthorized.

The resolution of public interest and necessity regarding the subject property stated that the property was "suitable, adaptable, necessary, and required for public use" by respondent "for the placement of dredged spoils incident to the construction of the district's Larkspur Ferry Terminal, for the implementation of recommended environmental mitigation measures, and for various transit purposes."

The trial court in its findings of fact and conclusions of law similarly found that the property sought was necessary for "the deposit of dredged spoils from the dredging incident to plaintiff's Larkspur Ferry Terminal Construction Project and for environmental mitigation measures necessitated by said project." This finding was supported in part by testimony concerning the need to regenerate marshland because of the deposit on the subject property of contaminated dredging spoils taken from the ferry terminal channel.

Former Streets and Highways Code section 27166 provided in pertinent part: *"The district may have and exercise, in the name of the district, the right of eminent domain for the condemnation of any property,* whether such property is already devoted to the same use or another public use, or otherwise, *necessary to the exercise of the powers granted in this part, or in any provision of law, to the district."* (Stats. 1972, ch. 1381, § 3, p. 2869, italics added.) These powers include the powers to "study, construct, acquire, improve, maintain, and operate any and all modes of transporta-

tion within or partly within the district, including, but not limited to, water transportation." (Stats. 1969, ch. 805, § 5, p. 1626, as amended by Stats. 1972, ch. 1382, § 6, p. 2870.)

Appellants first argue that "environmental mitigation" is neither an expressed nor an implied public purpose justifying condemnation by respondent.

■ It is a settled principle that a statutory grant of the power of eminent domain must be indicated by express terms or by clear implication. (*County of Marin* v. *Superior Court* (1960) 53 Cal.2d 633, 636 [2 Cal.Rptr. 758, 349 P.2d 526]; *City & County of San Francisco* v. *Ross* (1955) 44 Cal.2d 52, 55 [279 P.2d 529]; *Harden* v. *Superior Court* (1955) 44 Cal.2d 630, 640 [284 P.2d 9]; *Skreden* v. *Superior Court* (1975) 54 Cal.App.3d 114, 117 [126 Cal.Rptr. 411].) Statutory language defining such powers of a governmental entity are strictly construed and any reasonable doubt concerning the existence of the power should be resolved against the entity. (*Skreden* v. *Superior Court, supra*; *City of North Sacramento* v. *Citizen Utilities Co.* (1961) 192 Cal.App.2d 482, 483 [13 Cal.Rptr. 538]; see *City of Madera* v. *Black* (1919) 181 Cal. 306, 312 [184 P. 397].) However, a statute granting the power of eminent domain should be construed so as to effectuate and not defeat the purpose for which it was enacted. (*State of Cal.* ex rel. *Dept. of Water Resources* v. *Natomas Co.* (1966) 239 Cal.App.2d 547, 555-556 [49 Cal.Rptr. 64]; *Central Pacific Ry. Co.* v. *Feldman* (1907) 152 Cal. 303, 306 [92 P. 849]; see 1 Nichols on Eminent Domain (3d ed. 1976) § 3.213[2], pp. 3-94 - 3-96.)

■ Here the question is whether the respondent's power to condemn property necessary for water transportation implicitly includes the power to condemn property necessary for mitigation of the environmental effects caused by the water transportation system.

As the present record indicates, condemnation of property and the construction of facilities for water transportation involve the approval and acquisition of permits from numerous governmental agencies. Approval and permit requirements are especially strict where the planned facilities front on a body of water. In the present case there was testimony that respondent's terminal project required the approval of dozens of different agencies, including the State Lands Commission, Army Corps of Engineers, and Bay Conservation and Development Commission. Several of

these agencies required as a condition of their approval that environmental mitigation measures be taken. Although such mitigation measures could in some cases involve actions other than the condemnation of property, the ability to mitigate the adverse environmental effects in this manner gives respondent a power and flexibility which do much to effectuate the specific powers referred to in Streets and Highways Code section 27166. In the present case the trial court's findings reveal that mitigation of the environmental damage caused by the deposit of dredged spoils on certain marshlands was most effectively achieved by the condemnation and permanent protection of other marshlands.

Furthermore, the view that respondent's power to condemn property for a water transportation system implicitly includes the power to condemn for necessary mitigation of the resulting environmental effects is consistent with the legislative intent and policy expressed in the California Environmental Quality Act (Pub. Resources Code, §§ 21000-21176). Public Resources Code section 21000 expresses the legislative intent that all "public agencies which are found to affect the quality of the environment, shall regulate such activities so that major consideration is given to preventing environmental damage." In addition, environmental impact reports required by Public Resources Code section 21100, subdivision (c), must include a statement of the mitigation measures proposed by the agency to minimize the adverse environmental impact.

In concluding that respondent's power to condemn for the construction, acquisition and operation of a water transportation system implicitly includes the power to condemn for environmental mitigation, we recognize this latter power only as to environmental mitigation necessitated by an authorized activity. The power to condemn for specified purposes does not implicitly include the power to condemn for general environmental purposes unrelated to the agency's powers.

■ Appellants further contend that respondent lacked authority to condemn portions of their property for the deposit of dredged spoils.

Clearly, property for ferry channels may be needed for the construction and operation of the ferry system and terminal. The trial court found that dredging of these channels and disposal of the dredged spoils on appellants' land was necessary. The clear implication of the broad and inclusive language of the relevant statutes is that the respondent may

acquire property for the disposal of dredged spoils from a channel used in its transportation system. (Cf. *Skreden* v. *Superior Court, supra,* 54 Cal.App.3d 114, 117.) The mere fact that the subject property does not border on the channel does not preclude the power of respondent to condemn where, as here, the property is needed for such purpose.[1]

We have examined the remaining contentions of appellants and conclude that there was no error. A discussion of those contentions does not merit publication. (Cal. Rules of Court, rule 976.) Preferably, there would be a partial publication rule available for these circumstances. Absent such a rule, the balance of the opinion will be placed in a footnote.[2]

Judgment is affirmed. Appellants shall recover their costs on appeal.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied September 8, 1978, and appellants' petition for a hearing by the Supreme Court was denied October 4, 1978.

---

[1]Respondent's request to augment the record to include a trial brief dated May 22, 1975, entitled Trial Brief Regarding Plaintiff's Lack of Power to Condemn Herein, and respondent's request that we take judicial notice of Bay Area Conservation and Development Commission permit No. 22-73 dated February 20, 1974, and the State Lands Commission permit dated July 9, 1974, are granted.

[2]██ Appellants further contend that the trial court erred in excluding evidence regarding respondent's intended use and necessity for condemning the subject property. Appellants argue that the court erroneously ruled on these issues as a matter of law. They point out that respondent is not one of the agencies whose resolutions of public interest and necessity regarding property sought to be condemned are declared by statute to be conclusive evidence of the public need for planned projects in general and specific property in particular. (See former Code Civ. Proc., § 1241.)

There are definite uncertainties in the record as to the precise scope of the trial court's ruling on the issue of necessity for the condemnation of appellants' land; however, respondent's view that the ruling of the trial court did not determine the issues of public use and necessity as a matter of law is supported by the fact that following the court's ruling respondent introduced evidence in the form of testimony by Harry Reilich, an engineer for respondent, relating to the question of the necessity for the subject property for the purpose of environmental mitigation and for the deposit of dredged spoils. Appellants made no relevancy objection to this evidence, nor did they seek clarification of the court's earlier ruling. Furthermore, counsel for appellants proceeded to cross-examine Reilich on both these matters.

Appellants have failed to carry their burden on appeal of demonstrating error. Despite the uncertainties regarding the scope of the ruling of the trial court, the subsequent

conduct of both parties regarding testimony on the issue of necessity suggests that the ruling did not determine as a matter of law the necessity for condemning the subject property. This conclusion is consistent with the well known rule that a judgment of a trial court is presumed correct and that error must be affirmatively shown. (See generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, p. 4225.)

Furthermore, at the time appellants sought the court's ruling on the matter in question, they indicated that they would rely on Reilich's testimony in support of their challenge to the actual intended use of the subject property and the necessity for its condemnation; there was no reference to any other witness. Thus, in light of the fact that Reilich's testimony on direct and cross-examination supports the court's ruling, it does not appear that appellants were prejudiced by the ruling of the trial court.

■ Appellants contend that the trial court erred in refusing to allow them to cross-examine respondent's valuation witness, Charles Semple, with regard to his appraisal of a nearby parcel.

During the cross-examination of Semple, he admitted that he had appraised the 25.8-acre ferry terminal site, which apparently included part of an 11.48-acre parcel sold in 1971, for $500,000. Evidence regarding the sale of this second parcel had earlier been admitted as a comparable sale. Semple testified that the ferry site was fairly close to the subject property and was partly above and partly below water. He characterized it as "within the same area of influence" as the subject property. Following negotiations with the owner, respondent acquired the property for the terminal in 1972 by means of a stipulated judgment in eminent domain.

Evidence Code section 822 provides in part:

"Notwithstanding the provisions of Sections 814 to 821, the following matter is inadmissible as evidence and is not a proper basis for an opinion as to the value of property:

"(a) The price or other terms and circumstances of an acquisition of property or a property interest if the acquisition was for a public use for which the property could have been taken by eminent domain.

". . . . . . . . . . . . . . . .

"(d) An opinion as to the value of any property or property interest other than that being valued."

In support of their position, appellants rely on *State of Cal.* ex rel. *State Pub. Wks. Bd.* v. *Stevenson* (1970) 5 Cal.App.3d 60 [84 Cal.Rptr. 742]. In *Stevenson* the trial court permitted cross-examination of an appraiser for the state in a condemnation proceeding based on testimony he had given in an earlier proceeding regarding property "cater-corner" from the property sought to be condemned at trial. The court held that Evidence Code section 822, subdivision (d) did not prohibit the introduction into evidence of such testimony *for the purpose of impeachment.* The court noted that prior to the enactment of the Evidence Code, impeachment on such grounds had been permitted. The court in *Stevenson* pointed out that there was *no* question as to the relevance of the cross-examination.

Although the record is unclear as to the appraisal of which parcel appellants sought to impeach Semple with, their efforts appear to have been based on his appraisal of the *entire 25.8-acre terminal site.* Thus, the effort at impeachment of his testimony as to the value of the subject property was based on his evaluation of property which *included another parcel,* the sale of which had earlier been admitted as a sale of a comparable property. These facts differ significantly from *Stevenson,* where impeachment was simply on the basis of the appraiser's evaluation of a comparable parcel. In *Stevenson* there was no question of the similarity of the two parcels or the relevance of the impeaching evidence. Here the trial court properly sustained the objection.

Appellants contend that the trial court erred in refusing to strike the valuation testimony of two of respondent's appraisers, Semple and Arthur Gimmy. They argue that their appraisals were based on the plans of Corte Madera, which was empowered to

condemn, for the acquisition of the subject property as well as certain actions contemplated by it which constitute inverse condemnation. The trial court had earlier ruled that these plans were inadmissible.

Without expressing any opinion as to the validity of the plans of Corte Madera for the subject property, we do not find that either Semple's or Gimmy's testimony was based on these plans for the subject property. With regard to Semple's testimony, the mere fact that in his *deposition* he relied "to an extent" on some of these plans in appraising the property, and later gave the same appraisal as at trial, does not reveal that his *trial testimony* was also based on the same matters. Several other factors may have independently determined his evaluation. Gimmy's appraisal trial testimony did refer to the matters ruled inadmissible by the trial court; however, a careful examination of this testimony indicates that his opinion as to the limited scope of possible development of the property was dictated by numerous factors, including limited sewage disposal, problems with differential settlement and restrictions caused by a limited market. Gimmy's testimony indicated that he was fully aware of the very flexible nature of Corte Madera's tentative plans for the subject property and did not treat them as fixed points in appraising the property. Regardless of the court's ruling, it was proper to consider the town's plans as an expression of its attitude toward development.

Appellants contend that the trial court erred in permitting cross-examination of appellants' witnesses Robert Williams and Dave Van Pelt as to whether the Town of Corte Madera would allow any substantial development of the subject property. Appellants' argument is that by permitting cross-examination on such grounds, the court ignored its own earlier ruling against the admissibility of Corte Madera's proposed general plan.

Williams testified for appellants that in his opinion the highest and best use of the property was as a planned development consisting of "a combination of residential, commercial and office park." Such a development would have required a change in zoning. During cross-examination by respondent, Williams was asked about his knowledge of the attitudes of the planning commission regarding development of the subject property. Appellants objected to a question regarding extensive office development; the objection was overruled and questioning continued concerning the town's attitude toward a large scale development of the property. Williams indicated that he believed the development he had referred to would be possible.

Appellants have failed to show any error in the scope of the cross-examination permitted by the trial court. Since Williams' testimony was predicated on a change in the zoning, it was proper for respondent to elicit facts from him as to the basis of his belief that such a change was reasonably probable. (See *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1].) Clearly, the attitudes of the town are relevant in determining the probability of approval of a change in zoning. Williams' response to the questions on cross-examination was generally that there were no serious obstacles to the type of development he had referred to. None of his answers appeared to be based on the matter ruled inadmissible by the trial court.

Van Pelt testified as a witness for appellants concerning a multi-use development of the property. On cross-examination counsel for respondent inquired as to whether the town would have approved such a development on the valuation date. Van Pelt answered that he did not know.

As in the case of the testimony of Williams, there was no direct reference to the evidence that had earlier been ruled inadmissible. Respondent's questioning of Van Pelt was entirely proper and aimed at determining whether the town would approve the type of development on which he had relied in his testimony. Appellants' argument fails to distinguish between the specific terms of the town's plans, which the trial court ruled inadmissible, and the admissible evidence of the town's general attitude toward intensive development of property fronting the bay.

Appellants contend that the trial court abused its discretion in admitting into

evidence as a comparable sale the terms of a sale of property by an estate. In support of this argument, appellants point out that the estate sale involved no bidding. Semple's testimony referred to a 1969 sale of 256 acres for $500,000 from the estate of Manuel Pimental to Soilands and Associates. Semple testified that the sale occurred without bidding and was on terms favorable to the buyer. The estate had no financial problems which compelled it to sell. There was evidence that the property was similar to the subject property and that there were few other sales of comparable bay front property in recent years.

Evidence Code section 816 provides in part that in determining the value of property a witness may consider the terms of the sale of comparable property if the sale "was freely made in good faith." ▉ In some cases evidence of the purchase of property by a *condemner* may be admissible where "the price paid was sufficiently voluntary to be a reasonable index of value." (See *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].) ▉ The trial court has "wide discretion" in determining whether a particular sale is comparable. (See *County of Los Angeles, supra,* at p. 678; *City of Ontario* v. *Kelber* (1972) 24 Cal.App.3d 959 [111 Cal.Rptr. 222].)

Here there is no showing that the trial court abused its discretion in admitting evidence of the sale from the Pimental estate. The similarity of the two parcels was well established. Furthermore, there were limited sales of comparable property in recent years. Testimony following the court's ruling indicated that the property was sold by an experienced real estate appraiser acting as executor for the Pimental estate. It was for the jury to determine the significance of the Pimental estate sale.