[No. F017043. Fifth Dist. Oct. 14, 1992.]

KENNETH MEBANE RANCHES, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
FRESNO METROPOLITAN FLOOD CONTROL DISTRICT, Real Party
in Interest.

COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, William J. Thomas, William M. Brown and William A. Anderson for Petitioner.

B. C. Barmann, County Counsel (Kern), Mark L. Nations, Deputy County Counsel, Seyfarth, Shaw, Fairweather & Geraldson, William J. Thomas, Nancy M. McDonough, Carolyn S. Richardson, McClintock, Weston, Benshoff, Rocherfort, Rubalcava & MacCuish, Gregory R. McClintock and Jane M. Feamster as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Baker, Manock & Jensen, Douglas B. Jensen, John L.B. Smith and Susan F. Coberly for Real Party in Interest.

OPINION

BEST, P. J.—In this case we consider whether real party in interest, the Fresno Metropolitan Flood Control District (the District), has statutory authority to take property outside its territorial boundaries by eminent domain to mitigate the environmental effects of a project constructed within its boundaries. We conclude, on the facts alleged, it does not and grant the petition for writ of prohibition.

STATEMENT OF THE CASE

The District filed an action under the California Eminent Domain Law to acquire a 40-acre parcel located in Kern County, in the middle of the 18,000-acre cattle ranch owned by petitioner Kenneth Mebane Ranches (Mebane).

According to the allegations of the first amended complaint: the District is empowered by the Fresno Metropolitan Flood Control Act, Statutes 1955, chapter 503, sections 1-30, pages 971-984, Deering's Water—Uncodified Acts (1970 ed.) Act 2791, page 321 (Act 2791 or the Act), to protect lands within its jurisdiction from flooding and to conserve flood waters; the District is the local sponsor of the Redbank-Fancher Creeks Flood Control Project (the project) located within the District's jurisdiction in Fresno County; environmental assessment of the project revealed that a plant on the

California endangered species list, the Tulare Pseudobahia (pseudobahia or the plant), grows in the flood control basin; water runoff from major storms could inundate the basin and destroy the plant; the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) requires the District to mitigate that possibility by acquiring other property containing viable populations of the plant; the District located pseudobahia on land owned by Mebane in Kern County approximately 100 miles from the flood control site; following public hearings, the District's board of directors adopted Resolution No. 1591 and Supplemental Resolution No. 1633 which declare the necessity of acquiring Mebane land containing a viable stand of pseudobahia to mitigate the significant environmental impact on the plant engendered by construction of the project.

Mebane demurred to the District's first amended complaint contending (1) the court had no jurisdiction to grant the relief requested as the District had no power to condemn extraterritorially, and (2) the pleadings did not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer.

The factual allegations of the petition are deemed to be true for purposes of our review. (*City of Beaumont* v. *Beaumont Irr. Dist.* (1965) 63 Cal.2d 291, 292 [46 Cal.Rptr. 465, 405 P.2d 377].)

Mebane seeks a writ of prohibition directing the trial court to vacate its order overruling the demurrer and to enter an order sustaining the demurrer. The District concurs the novel jurisdictional issue should be decided at this juncture rather than after trial.

## DISCUSSION

### *Propriety of Writ Relief*

A writ of prohibition may issue to restrain judicial action in excess of jurisdiction where there is no other adequate remedy. (Code Civ. Proc., §§ 1102, 1103.)[1] When the power of a condemning agency to maintain an action in eminent domain has been raised in the trial court by demurrer and the jurisdictional challenge has been resolved in favor of the condemnor, the jurisdictional issue may be raised by a petition for writ of prohibition. (*Skreden* v. *Superior Court* (1975) 54 Cal.App.3d 114, 116, fn. 1 [126 Cal.Rptr. 411]; *Harden* v. *Superior Court* (1955) 44 Cal.2d 630, 634-636 [284 P.2d 9].) Thus, the jurisdictional question of public importance raised by this case is appropriate for writ of prohibition review.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Can the District take property outside its territorial boundaries by eminent domain to mitigate the environmental effects of a project constructed within its boundaries?*

### 1. Express Authority

In granting a local public agency the power of eminent domain, the Legislature may prescribe the particular property that may be condemned as well as the use for which property may be taken. (§§ 1240.020, 1240.050; 29 Cal.Jur.3d (rev.) Eminent Domain, § 6, pp. 59-60.) Thus, this court must determine whether the District is empowered to acquire property outside its boundaries by eminent domain for environmental mitigation purposes.

The District's powers of extraterritorial condemnation are set forth in its enabling act, Act 2791, and the California Eminent Domain Law, sections 1240.050 and 1240.125. Neither the enabling act nor the California Eminent Domain Law expressly authorizes the District to exercise extraterritorial condemnation for environmental mitigation purposes.

Section 8 of Act 2791 provides the District shall have:

"the powers enumerated in this act, all powers necessarily or reasonably implied therefrom, and all powers necessarily or reasonably implied from the creation and existence of the district. The powers include the following:

"  . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"3.  To have and exercise the power of eminent domain.

"4.  To take by grant, exchange, purchase, including for cash, promissory note secured by purchase money deed of trust, assumption of existing indebtedness, or any combination thereof, gift, lease, devise or otherwise and to hold, use, and enjoy real or personal property . . . within or without the district necessary to or convenient for the full exercise of its powers.

"5.  To acquire lands, rights-of-way . . . and property of every kind and nature, to construct, maintain, and operate any or all works or improvements within or without the district necessary or proper to carry out any of the objects or purposes of this act, and to complete, extend . . . or otherwise improve any works or improvements acquired by it . . . and used in whole or in part for flood control, storm drainage, or water conservation purposes."

Section 7, subdivision (a) of Act 2791 provides the purposes of the Act and the District are: (1) to control storm, flood or waste waters of or within

the District, (2) to protect property within the District from those waters, and (3) to conserve those waters by groundwater recharge.

Section 26 of the Act provides the power of eminent domain vested in the District shall be exercised pursuant to the California Eminent Domain Law (§ 1230.010 et seq.).

The Eminent Domain Law provides in pertinent part:

"Except as otherwise specifically provided by statute, the power of eminent domain may be exercised only as provided in this title." (§ 1230.020.)

"A local public entity may acquire by eminent domain only property within its territorial limits except where the power to acquire by eminent domain property outside its limits is expressly granted by statute or necessarily implied as an incident of one of its other statutory powers." (§ 1240.050.)

"Except as otherwise expressly provided by statute and subject to any limitations imposed by statute, a local public entity may acquire property by eminent domain outside its territorial limits for water, gas, or electric supply purposes or for airports, drainage or sewer purposes if it is authorized to acquire property by eminent domain for the purpose for which the property is to be acquired." (§ 1240.125.)

The legislative committee comment on section 1240.125 (Deering's Ann. Code Civ. Proc. (1981 ed.) § 1240.125, pp. 49-50) states:

"[The section] makes clear that a local public entity authorized to condemn for utility purposes is expressly authorized to condemn property outside its territorial limits for such purposes, thus avoiding the need to imply such authority under some other statute. Under Section 1240.125, a local public entity authorized to condemn for water supply purposes, for example, may condemn outside its boundaries for water supply purposes. As used in this section, 'utility supply purposes' includes collection, generation, storage, and distribution. . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"Section 1240.125 does not affect implied extraterritorial condemnation authority for other purposes under other statutes as authorized by section 1240.050."

■ A statutory grant of eminent domain power must be indicated by express terms or by clear implication. Statutory language defining eminent

domain powers is strictly construed and any reasonable doubt concerning the existence of the power is resolved against the entity. However, a statute granting the power of eminent domain should be construed to effectuate and not defeat the purpose for which it was enacted. (*Golden Gate Bridge etc. Dist.* v. *Muzzi* (1978) 83 Cal.App.3d 707, 712 [148 Cal.Rptr. 197].)

■ Under this strict construction standard, the California Eminent Domain Law does not expressly authorize the District's extraterritorial exercise of eminent domain to secure the Mebane property for environmental mitigation purposes. Section 1240.125 authorizes extraterritorial condemnation for six enumerated purposes, including "water" and "drainage." Environmental mitigation is not one of the specified purposes. Moreover, under the strict construction standard, we cannot read the statute to authorize extraterritorial condemnation to mitigate the environmental impact of a water or drainage project.

Section 1240.050, which authorizes extraterritorial condemnation where expressly granted by statute, does not authorize the District's condemnation of the Mebane property because the District's enabling act does not expressly empower the District to condemn lands outside its boundaries for environmental mitigation purposes. First, paragraph 3 of section 8 of the Act, which simply grants the District the power of eminent domain, does not empower it to condemn property outside its boundaries. (Cf. *Sacramento etc. Dist.* v. *Pac. G. & E. Co.* (1946) 72 Cal.App.2d 638, 644 [165 P.2d 741]: Under the Municipal Utility District Act the Sacramento Municipal Utility District had power " 'To . . . condemn in proceedings under eminent domain . . . real and personal property of every kind within or without the district . . . .' "; Pub. Resources Code, § 5540: "A [regional park, etc.] district may take by grant, [or] . . . condemnation . . . property of every kind, . . . within or without the district . . . .")

Second, the grant of power in paragraph 4 of section 8 of the Act "[t]o take by grant . . . or otherwise . . . real or personal property . . . within or without the district necessary to or convenient for the full exercise of its powers" is not an express grant of eminent domain power outside District boundaries for environmental mitigation purposes. Paragraph 4 lists a number of voluntary methods by which the District may "take" property outside its boundaries to effectuate its purposes. Under the strict construction standard, the "or otherwise" provision can only be construed to refer to another voluntary method of acquisition. (Cf. *Harden* v. *Superior Court, supra,* 44 Cal.2d at pp. 640, 642, a grant of power to *"purchase, lease, or receive such . . . real estate* situated *inside or outside* the city limits as is necessary or proper for municipal purposes" did not expressly authorize the city to take property outside its boundaries by eminent domain. Italics in original.)

For similar reasons, the grant of power in paragraph 5 of section 8 of the Act "[t]o acquire lands . . . to construct, maintain, and operate any or all works or improvements within or without the district necessary or proper to carry out any of the objects or purposes of this act . . ." does not expressly authorize the District's exercise of eminent domain in this case. Even if we construe the "acquire" language of paragraph 5 to include acquisition by eminent domain, the paragraph as a whole must be read in light of section 26 of the Act, which provides that the District's powers of eminent domain shall be exercised pursuant to the California Eminent Domain Law. Read in that light, paragraph 5 merely empowers the District to acquire by eminent domain property outside its boundaries to construct, maintain, or operate a necessary "water" or "drainage" improvement. It does not empower the District to condemn property outside its boundaries to mitigate the environmental effects of a necessary improvement constructed, maintained or operated within the District. Therefore, the District has no express power to condemn property extraterritorially for environmental mitigation purposes. If the District is so empowered, such power must be "necessarily implied as an incident of one of its other statutory powers." (§ 1240.050.)

### 2. *Implied Authority*

Section 1240.050 permits extraterritorial condemnation by a local public entity when that power is "necessarily implied as an incident of one of its other statutory powers." This exception codified prior law, which acknowledged the power of extraterritorial condemnation when necessary to implement local condemnation. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 75 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208].)

### A. *The Concept of "Legal Necessity"*

■ Critical to a discussion of whether the District has an implied power of extraterritorial condemnation is a determination of the standard of "necessity" implicit in section 1240.050's language, "except where the power to acquire by eminent domain property outside its limits is . . . *necessarily* implied as an incident of one of its other statutory powers." (Italics added.)

We do not agree that the standard of necessity encompassed in section 1240.050's "necessarily implied" language is identical to the standard of necessity encompassed in section 1240.030, subdivision (a)'s "The public interest and necessity require the project" and subdivision (c)'s "The property sought to be acquired is necessary for the project."[2]

■ The latter provisions require only a reasonable necessity under all the circumstances of the case and not an absolute or imperative necessity.

[2]Section 1240.030 provides:

"The power of eminent domain may be exercised to acquire property for a proposed project only if all of the following are established:

"Generally, statutory requirements of necessity as a condition of the exercise of the power of eminent domain are liberally construed by the courts so as not to limit unnecessarily the power of the condemning agency. . . . 'The necessity specified by the statute . . . does not mean an imperative or indispensible or absolute necessity but only that the taking provided for be reasonably necessary for the accomplishment of the end in view under the particular circumstances.' " (*City of Hawthorne* v. *Peebles* (1959) 166 Cal.App.2d 758, 761, 763 [333 P.2d 442], italics omitted.) The "necessity" determinations of section 1240.030 are questions for the trier of fact at trial. (*City of Carlsbad* v. *Wight* (1963) 221 Cal.App.2d 756, 762 [34 Cal.Rptr. 820].)

█ On the other hand, the pertinent language in section 1240.050 addresses the statutory authority of a local public entity to acquire property by eminent domain outside its territorial limits. As such, it involves a jurisdictional issue, a question of law to be determined by the court. (See *Harden* v. *Superior Court, supra,* 44 Cal.2d 630, 637-638.) To distinguish this concept from section 1240.030's elements of necessity, we refer to this as a determination of "legal necessity."

The legislative committee comment to section 1240.050 states the section codifies prior law. Prior cases addressing whether the power of extraterritorial eminent domain could be necessarily implied from a public entity's other enumerated powers applied a higher standard than reasonable or practical necessity. For example, language purporting to define the eminent domain powers of a municipal corporation is to be strictly construed, and the power is denied where there is any fair, reasonable doubt concerning its existence. (*Harden* v. *Superior Court, supra,* 44 Cal.2d at p. 641.) "In certain instances owing to the urgency of extreme expediency or necessity, [the requirement of] express authority is dispensed with and the power of the municipality to perform certain acts beyond its boundaries is implied as incidental to the existence of other powers expressly granted. . . . 'Therefore, in the case of a municipality, power to act outside of the boundaries of the municipality . . . does not exist unless expressly granted, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation.' " (*Id.* at p. 639; accord, *Mulville* v. *City of San Diego* (1920) 183 Cal. 734, 738-739 [192 P. 702]: improvement district had no implied authority to sell bonds to construct a pleasure pier

---

"(a) The public interest and necessity require the project.
"(b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.
"(c) The property sought to be acquired is necessary for the project."

located adjacent to, but not within, the district. "[T]he construction of a pleasure pier [does not] come within the rule applicable to the construction of outlets for sewers, or sources of supply of light and water, for it cannot be classified as a matter of necessity or extreme expediency"; *City of Mill Valley* v. *Saxton* (1940) 41 Cal.App.2d 290, 293 [106 P.2d 455]: "If a city is endowed with the power to sell excess utility service, the means of performance whereby the service can be made and supplied are necessarily implied in the grant of the power to sell." "Means of performance" describes something essential rather than merely useful or suitable to the project; *City of Los Angeles* v. *Koyer* (1920) 48 Cal.App. 720, 725 [192 P. 301]: " 'A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained.' ")

*City of Carlsbad* v. *Wight, supra,* 221 Cal.App.2d 756, also illustrates this higher standard. The city sought to acquire a parcel of property outside its boundaries to build a storm drainage canal. After a trial, the court concluded there was no necessity for the city to condemn defendant's property to construct a drainage canal. By reason of such lack of necessity, the city did not have the implied power to condemn land situated wholly outside its boundaries. (*Id.* at p. 758.) The Court of Appeal affirmed. It stated the city had no express grant of authority to condemn property outside its boundaries, "nor may such grant of power be fairly implied except in a case involving legal necessity." (*Id.* at p. 761.) While the record disclosed that the city may have shown practical necessity, there was no showing of "urgency, or extreme expediency, or legal necessity, or that the proposed taking [was] indispensible." (*Id.* at p. 764.)

Because the Legislature intended to codify prior law when it enacted section 1240.050, it must have incorporated the prevailing standard applicable to determine when the power of extraterritorial condemnation will be necessarily implied as an incident to a local public entity's other enumerated powers. That standard requires the power of extraterritorial condemnation to be a matter of "urgency of extreme expediency or necessity," or "manifestly desirable," or "essential to the declared objects" of the local public entity (*Harden* v. *Superior Court, supra,* 44 Cal.2d at p. 639; *Mulville* v. *City of San Diego, supra,* 183 Cal. at pp. 737-738; *City of North Sacramento* v. *Citizens Utilities Co.* (1961) 192 Cal.App.2d 482, 486 [13 Cal.Rptr. 538]), or indicated by "clear implication" (*City of Los Angeles* v. *Koyer, supra,* 48 Cal.App. at p. 725).

Sound policy reasons exist to construe narrowly a local public entity's power to take land outside its boundaries to mitigate the environmental effects of projects within its boundaries:

"It is apparent that the Legislature, in differentiating between property inside and outside the territorial limits of the condemning agency, recognized the differences in the postures of both the property owner and the condemning agency in these contrasting situations. Where the property is inside the territorial limits, the ministerial officers and legislative body of the condemning agency and the property owners and taxpayers should have full knowledge of conditions, locations, and the public good involved in the proposed improvement. Furthermore, the legislative body and, by derivation, their ministerial functionaries, are accountable to those who are property owners and, also, to those who are taxpayers within the territorial limits through the elective process. But where the property sought to be taken is outside and distant from these territorial limits, neither such knowledge nor such accountability may be present. . . ." (*City of Los Angeles* v. *Keck* (1971) 14 Cal.App.3d 920, 925 [92 Cal.Rptr. 599].)

This policy is implemented in section 1245.250, subdivision (b) which places a significant limitation on an entity's exercise of extraterritorial condemnation. Under section 1245.250, subdivision (a), if the property to be taken by eminent domain is located within the boundaries of the condemning entity, the resolution of necessity adopted by the public entity conclusively establishes the necessary findings to the exercise of eminent domain, namely: (a) the public interest and necessity require the project, (b) the project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury, and (c) the property sought to be acquired is necessary for the project. (§ 1240.030.) However, if the property to be taken is not located entirely within the boundaries of the local public entity, the resolution of necessity merely creates a presumption that the matters referred to in section 1240.030 are true. This presumption is a presumption affecting the burden of producing evidence. (§ 1245.250, subd. (b).)[3]

The same policy which supports the limitation of extraterritorial eminent domain power in section 1245.250, supports a more limited construction of the concept of necessity encompassed in section 1240.050.

We note the final paragraph of the legislative committee comment to section 1240.050 reads:

"The 'necessity' required to justify extraterritorial condemnation is only a reasonable necessity under all the circumstances of the case and not an

---

[3]"The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate." (Evid. Code, § 604.)

absolute or imperative necessity. City of Hawthorne v. Peebles, *supra*. While economic considerations alone may not be sufficient to justify extraterritorial condemnation, considerations of economy may be taken into account in determining necessity. Sacramento Mun. Util. Dist. v. Pacific Gas & Elec. Co., *supra*. Compare City of Carlsbad v. Wight, *supra*."

While the statement, "The 'necessity' required to justify extraterritorial condemnation is only a reasonable necessity under all the circumstances . . ." at first blush appears to refer to the "reasonably implied" determination, the cases cited discuss only the necessity concept encompassed in section 1240.030, subdivisions (a) and (c). In *City of Hawthorne v. Peebles, supra*, the city had express statutory power to condemn property outside but "conveniently adjacent" to its borders and the only issue was whether the finding that the public interest and necessity required the acquisition of the property (§ 1240.030) was supported by the evidence. (*Id.* at pp. 760-763.) Likewise, in *Sacramento etc. Dist. v. Pac. G. & E. Co., supra*, 72 Cal.App.2d 638, the district was expressly empowered with the authority to condemn property "within and without the district necessary to full or convenient exercise of its powers." (*Id.* at p. 644.) The issue before the court was whether substantial evidence supported the trial court's finding that an extraterritorial provision of services was "necessary or convenient" to the provision of services to the inhabitants of the district. (*Id.* at p. 654.) Unlike this case, the court was not faced with the more basic issue of whether the district's power of extraterritorial eminent domain was "necessarily implied as an incident of one of its other powers."

Other cases called to our attention also are distinguishable because they address an express statutory power of extraterritorial condemnation, but for a challenged purpose. In *Monterey County Flood Control & Water Conservation Dist. v. Hughes* (1962) 201 Cal.App.2d 197 [20 Cal.Rptr. 252], the court considered whether a district's exercise of extraterritorial eminent domain could be used to take property for recreational purposes as an incident to the acquisition of lands for flood control and water conservation. (*Id.* at p. 200.) As such, the court was construing the district's enabling act, and was not determining whether the district's exercise of extraterritorial domain in this instance was "necessarily implied as an incident of one of its other powers." (See also *Skreden v. Superior Court, supra*, 54 Cal.App.3d 114, 117-118: statute empowering a mosquito abatement district to condemn any property necessary for certain enumerated purposes [building dikes, canals, etc.] and to do all things necessary or incident to the powers granted it, by implication authorized the district to condemn lands to build an office and corporation yard.)

These cases are not dispositive of or even analogous to the issue presented in this case: what standard of necessity applies to the "necessarily implied" language of section 1240.050?

Accordingly, we hold that the determination of whether a local public agency's power of extraterritorial condemnation is "necessarily implied as an incident of one of its other enumerated powers" involves a determination of "legal necessity," which has been defined by the courts as a matter of "urgency of extreme expediency or necessity," or "manifestly desirable" or "essential to the declared objects" of the entity (*Harden* v. *Superior Court, supra,* 44 Cal.2d at p. 639; *Mulville* v. *City of San Diego, supra,* 183 Cal. at pp. 737-738; *City of North Sacramento* v. *Citizens Utilities Co., supra,* 192 Cal.App.2d at p. 486), or otherwise indicated by "clear implication" (*City of Los Angeles* v. *Koyer, supra,* 48 Cal.App. at p. 725).

B. *The Complaint Does Not Allege Facts Constituting "Legal Necessity"*

■ A few cases have acknowledged the power of implied extraterritorial condemnation when necessary to implement local condemnation. For example, courts have held where a municipality had the power to construct sewers, it could extend them beyond its boundaries to an outfall as an implied incident of its express powers when necessary or manifestly desirable. (See *Harden* v. *Superior Court, supra,* 44 Cal.2d at pp. 638-639 and cases cited therein.)

We have found only one additional case in which the court found an implied power of extraterritorial eminent domain, *City of North Sacramento* v. *Citizens Utilities Co., supra,* 192 Cal.App.2d 482.[4] The city sought to condemn a water system which served customers both within and without the city boundaries. Applicable statutes specifically authorized the city to condemn water systems within its boundaries, to condemn wells and water on adjacent lands and to provide water services to persons within and without its boundaries (At pp. 483-485.) Although none of the statutory provisions provided the city express authority to condemn that portion of the water system outside its boundaries, the court implied the power as incidental to the existence of the powers expressly granted. (*Id.* at p. 485.) The court

---

[4]Under current eminent domain law, the court would not have to find an implied power of eminent domain in this case or the sewer cases. Section 1240.125 empowers a local public entity to condemn property outside its boundaries where necessary for "water" or "sewer purposes" if it is authorized to acquire property by eminent domain for the purposes for which the property is to be acquired.

reasoned, if the power exists to construct public works or improve property outside the municipal limits, and a statute expressly or by necessary implication authorizes the condemnation of property within the corporate limits for such purposes, then the municipality is impliedly authorized to condemn property outside the limits for such purposes. (*Id.* at pp. 486-487.)

Application of that rule to this case would yield the following: Paragraph 5 of section 8 of Act 2791 empowers the District to construct, maintain or operate all works or improvements within or without the District necessary to carry out its purposes of flood control and water conservation. Paragraph 3 of that section authorizes the District to exercise the power of eminent domain (at least within the District limits) for such purposes. Thus, under *City of North Sacramento* v. *Citizens Utilities Co.*, *supra*, 192 Cal.App.2d at page 487, the District, by implication, would be authorized to condemn property outside its boundaries to construct, maintain or operate a project necessary for flood control or water conservation within the District. Carrying the analogy a step further, the District may condemn property outside its boundaries to mitigate the adverse environmental effects of its authorized project, if such mitigation is "legally necessary" in order to construct, maintain or operate an authorized project within its boundaries.

The District contends its enabling act necessarily implies the authority to condemn extraterritorial property for environmental mitigation purposes where, as here, the mitigation is "required" as an incident of the District's exercise of its express powers of water conservation and storage, citing *Golden Gate Bridge etc. Dist.* v. *Muzzi*, *supra*, 83 Cal.App.3d 707. The *Muzzi* court held that the transit district's power to condemn property for a water transportation project implicitly included the power to condemn property necessary for mitigation of the environmental effects caused by the project. That case is distinguishable, however, for as the opinion noted:

"As the present record indicates, condemnation of property and the construction of facilities for water transportation involve the approval and acquisition of permits from numerous governmental agencies. Approval and permit requirements are especially strict where the planned facilities front on a body of water. In the present case there was testimony that respondent's terminal project required the approval of dozens of different agencies, including the State Lands Commission, Army Corps of Engineers, and Bay Conservation and Development Commission. *Several of the agencies required as a condition of their approval that environmental mitigation measures be taken.*" (83 Cal.App.3d at pp. 712-713, italics added.)

Further, the question of whether the transit district had implied authority to condemn property extraterritorially for environmental mitigation purposes was neither addressed nor decided in that case.

Read broadly, *Muzzi* stands for the proposition when approval of a local public entity's project *requires* that environmental mitigation measures be taken, the entity's ability to mitigate the adverse environmental effects of the project by exercise of the power of eminent domain may be implied as an incident to its other statutory powers. (*Golden Gate Bridge etc. Dist.* v. *Muzzi, supra,* 83 Cal.App.3d at p. 713.)

In *Muzzi*, environmental mitigation measures were required by several governmental agencies as a prerequisite to approval of the project. In this case, the District alleges CEQA requires it to mitigate the adverse environmental effects of its flood control project by acquiring the Mebane property. We do not read the pertinent portions of CEQA as *requiring* mitigation in this manner.

CEQA imposes a duty on public agencies to avoid or mitigate the significant environmental impacts caused by projects *when feasible to do so*. (Pub. Resources Code, §§ 21001, subd. (c), 21002, 21002.1, subd. (b); *Laurel Hills Homeowners Assn.* v. *City Council* (1978) 83 Cal.App.3d 515, 521 [147 Cal.Rptr. 842].) CEQA also gives public agencies the authority to approve a project notwithstanding its environmental impacts, if the agency determines it is not feasible to lessen or avoid the significant effects (Pub. Resources Code, § 21002; Cal. Code Regs., tit. 14, § 15043, subd. (a)), and if specifically identified benefits of the project outweigh the unavoidable, significant environmental impacts. (Pub. Resources Code, § 21002.1, subd. (c); Cal. Code Regs., tit. 14, § 15043, subd. (b); *San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 596-597 [122 Cal.Rptr. 100].) CEQA does not grant a local public entity additional powers, independent of those granted by other laws. (Pub. Resources Code, § 21004.)

The District's claim of legal necessity is grounded on CEQA statutes which it alleges require it to acquire the Mebane property in order to mitigate the environmental effects of its flood control project. The District's first amended complaint alleges that under CEQA mandates, "the property sought to be acquired is necessary for the project." This is a legal conclusion. A demurrer "makes no binding judicial admissions . . . . But provisionally, and solely for the purpose of testing the question of law raised . . . , all material, issuable facts properly pleaded in the complaint are admitted . . . ."(5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 898, p. 338.) However, allegations constituting legal conclusions are not provisionally admitted for the purposes of a demurrer. (*Ibid.*) Moreover, a demurrer "does not admit a conclusion of law, nor does it admit . . . facts

impossible in law, or allegations contrary to facts of which a court may take judicial knowledge." (*Griffin* v. *County of Colusa* (1941) 44 Cal.App.2d 915, 918 [113 P.2d 270].)

CEQA only requires the District to mitigate adverse environmental effects of a project "whenever it is feasible." The state CEQA Guidelines define "feasible" to mean "capable of being accomplished in a successful manner within a reasonable period of time, taking into account economic, environmental, legal, social, and technological factors." (Cal. Code Regs., tit. 14, § 15364.) If there is no other feasible way to mitigate the environmental impact, District may proceed with the project and be in full compliance with CEQA. Since CEQA requires the District to mitigate the environmental effects of its project only when feasible, the District's acquisition of the Mebane property by extraterritorial eminent domain for environmental mitigation purposes would not—and could not—be a matter of "urgency or extreme expediency or necessity," or "essential to the declared objects" of the District. Thus, to accept as true the District's allegation that, based on CEQA, the property sought to be acquired is necessary for the proposed project would be to accept as fact something that is impossible in law. (Cf. *City of Beaumont* v. *Beaumont Irr. Dist.*, *supra*, 63 Cal.2d 291.)

In summary, the pertinent portions of the CEQA statutes do not require that the District obtain the Mebane property in order to construct, operate or maintain the flood control project. Therefore, the District's exercise of extraterritorial eminent domain in this instance is not a matter of urgency or extreme expediency or essential to the District's declared objects or purposes. In short, it is not legally necessary for the proposed project. As such, we cannot by implication empower the District to exercise the right of eminent domain to condemn the Mebane property for environmental mitigation purposes as an incident to District's flood control and water conservation statutory powers.

In a petition for rehearing, the District submits that, like the transit district in *Muzzi*, it is required by other agencies as a condition of approval of the project to mitigate the adverse environmental effect to be caused by construction of the flood control levee. Thus, the District asserts it can state a cause of action in eminent domain, even under the more stringent standard of necessity which we apply to the section 1240.050 implied power of extraterritorial condemnation determination. Accordingly, we will grant the petition for writ of prohibition and order the trial court to sustain the demurrer with leave to amend.

## DISPOSITION

The petition is granted. Let a writ of prohibition issue ordering the Kern County Superior Court to sustain the demurrer in action No. 215671 with leave to amend. Costs to petitioner.

Vartabedian, J., and Franson, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied December 31, 1992.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.