William H. MITTON and Suzanne Petru, Plaintiffs-Appellants,

v.

Wisconsin DEPARTMENT OF TRANSPORTATION, Defendant-Respondent.†

Court of Appeals

*No. 93–0160. Oral argument July 27, 1993.—Decided September 14, 1993.*

(Also reported in 507 N.W.2d 126.)

†Petition to review granted.

On behalf of the appellants, the cause was submitted on the briefs of *Hugh R. Braun* and *Beth A. Thorson* of *Godfrey, Braun & Hayes*, and the oral argument of *Hugh R. Braun* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel S. Farwell*, assistant attorney general, and the oral argument of *Daniel S. Farwell*.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. William Mitton and his sister, Suzanne Petru, (the Mittons) appeal an order granting a Wisconsin Department of Transportation (DOT) cross-motion for summary judgment and dismissing the Mittons' complaint. The suit was brought under sec. 32.05(5), Stats.,[1] to contest the DOT's authority to condemn the Mittons' property. The trial court found that the DOT had authority to condemn the property under sec. 85.04, Stats.

The Mittons argue that the trial court erred by granting summary judgment in favor of the DOT because neither statute granting the DOT condemnation power, secs. 85.04 nor 84.09, Stats., applies. We agree and therefore reverse.

The DOT decided to undertake a construction project on U.S. Highway 29 in Shawano County that would bypass the city of Shawano and the village of Bonduel.

---

[1] Section 32.05(5) provides in part: "If an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate, the owner may . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant."

The project is part of the federal aid primary highway system and is being constructed with federal financial assistance. Among the alternative routes considered for the bypass, the DOT chose one that crossed the Mittons' property.

The environmental impact analysis required by state and federal law discovered that part of the highway right-of-way would cross over an historic archeological site (an Indian burial ground) partly located on the Mittons' property. The burial ground has been identified as the "Magee-Mitton" site and is eligible for inclusion in the National Register of Historic Places.

Under state and federal law, the DOT could not disturb the artifacts on the Magee-Mitton site without first obtaining the concurrence of the state and federal historic agencies.[2] Therefore, the DOT was left with options to abandon the route or establish a plan to mitigate any harm done to the site by the highway construction. The DOT determined that complete recovery of the artifacts located in the highway right-of-way was not feasible because of the time and expense involved. However, an alternative mitigation plan was accepted by the federal and state historic preservation authorities.

The agreement called for a limited level of recovery of artifacts in the right-of-way and the acquisition and preservation of the remainder of the archaeologic site in order to mitigate harm caused by the highway construction. Based on this agreement, the Federal Highway Administration (FHWA) entered into a programmatic agreement with the Advisory Council on Historic Preservation (ACHP), with the concurrence of

[2] *See, e.g.,* 16 U.S.C. § 470f; 49 U.S.C. § 303; sec. 84.01(15) and 84.03(1)(a), Stats.

the DOT and the Wisconsin State Preservation Officer (SHPO). Upon execution of the agreement, the FHWA gave its approval to the DOT to proceed with the project.

Negotiations between the DOT and the Mittons to purchase the Mittons' property failed, and the DOT served the Mittons with an award of damages pursuant to sec. 32.05(7), Stats. The total amount of Mitton property condemned by the DOT was 6.26 acres. Approximately one acre was needed for the highway right-of-way and the Mittons concede that the DOT has authority to condemn this acre. The Mittons only object to the condemnation of the remainder of the archeological site; that is, the additional five acres that are outside the highway right-of-way.

When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816, 820 (1987). Because the methodology is familiar, we need not repeat it here. *See id.* Furthermore, interpretation of a statute is a question of law that we review de novo, *Brandt v. LIRC*, 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991), and, because condemnation statutes are in derogation of common-law, they are to be strictly construed. *Maxey v. Redevelopment Auth. of Racine*, 94 Wis. 2d 375, 399, 288 N.W.2d 794, 805 (1980).

## *SECTION 85.04, STATS.*

The Mittons contend that the trial court erred by basing its summary judgment order on sec. 85.04, Stats., which provides: "If federal law prohibits the acquisition of lands determined by the secretary [of the DOT] to be necessary for transportation purposes

unless replacement lands are provided, the department may acquire by gift, devise, purchase or condemnation any lands or interests in lands necessary to satisfy the replacement requirement."

■

Condemnation statutes are in derogation of common-law and therefore must be strictly construed. "Statutes are not to be construed as changing the common[-]law unless the purpose to effect such change is clearly expressed therein. To have such an effect 'the language [of the statute] must be clear, unambiguous and peremptory.'" *Maxey*, 94 Wis. 2d at 399, 288 N.W.2d at 805 (quoting *Wisconsin Bridge & Iron Co. v. Ramsay*, 233 Wis. 467, 474, 290 N.W. 199, 202 (1940)). Section 85.04, Stats., unambiguously changes the common-law rule and allows condemnation in a specific situation: where federal law prohibits acquisition of land the secretary of the DOT deems to be necessary for transportation purposes unless replacement lands are provided.

The DOT relies on two federal laws, 16 U.S.C. § 470f and 49 U.S.C. § 303(c) to support its argument that sec. 85.04, Stats., applies. For these federal laws to activate authority under sec. 85.04, they must prohibit acquisition of the right-of-way unless replacement lands are provided. However, neither of the applicable federal laws meets these criteria.

■

The National Historic Preservation Act, 16 U.S.C. § 470f, reads:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking

*shall, prior to the approval of the expenditure of any Federal funds on the undertaking* or prior to the issuance of any license, as the case may be, *take into account the effect of the undertaking on any district, site*, building, structure, or object that is included in or *eligible for inclusion in the National Register.* The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470v of this title a reasonable opportunity to comment with regard to such undertaking. (Emphasis added.)

This Act required the FHWA to take into account the effect the federally funded highway project would have on the Magee-Mitton site prior to approving federal expenditure for the project. This does not amount to a prohibition on acquisition of the right-of-way unless the DOT provides replacement lands.

Next, 49 U.S.C. § 303 states that the secretary of transportation may approve a transportation project requiring land of an historic site of national, state or local significance only if: "(1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the . . . historic site resulting from such use."[3]

■■

The FHWA's regulation adopted to promulgate § 303 requires the FHWA planners, the Wisconsin DOT and the SHPO to evaluate alternatives to avoid the use of the Magee-Mitton site and possible measures to minimize harm to the site if it is used. 23 C.F.R. § 771.135(a)(1), (e) and (i). The result was an agree-

---

[3] Very similar language is found in 23 U.S.C. § 138 relating to federally aided highway projects affecting historic sites, parks and recreation lands and wildlife and waterfowl refuges.

ment that provided for limited removal of artifacts from the right-of-way and acquisition of the remainder of the site to mitigate the loss of these artifacts through the guaranteed preservation of the remainder. Although this agreement might be said to be one that provides replacement lands, it is merely one of a number of mitigation plans that the state and federal agents could have agreed upon. Nothing in this regulation or § 303 requires the DOT to provide replacement lands in order to enable it to acquire the right-of-way.

■ Therefore, because a plain reading of sec. 85.04, Stats., allows condemnation only in the specific situation where federal law prohibits acquisition of the necessary land unless replacement lands are provided and federal law does not require replacement lands to lift the acquisition prohibition, we conclude that it was error to grant the DOT summary judgment based on sec. 85.04.

### SECTION 84.09(1), STATS.

■ As an alternative, the state contends that sec. 84.09, Stats., supports summary judgment because the remainder of the archeological site, that is, that part outside of the right-of-way, was necessarily condemned for transportation related purposes. Section 84.09(1) provides in part: "The department may acquire by gift, devise, purchase or condemnation any lands for establishing, laying out, widening, enlarging, extending, constructing, reconstructing, improving and maintaining highways and other transportation related facilities . . . ." The statute later refers to these as "transportation related purposes." The issue, therefore, is whether the condemnation of the portion of the

archeological site outside of the right-of-way was for transportation related purposes. We conclude that only the portion of the land needed for the right-of-way was for transportation related purposes, and sec. 84.09 does not provide the DOT with authority to condemn the remainder of the site.

The DOT contends that because it was compelled to acquire replacement lands in order to obtain federal approval to continue the project in the chosen corridor, the replacement lands were for transportation related purposes and the DOT had express authority to condemn the land under sec. 84.09(1), Stats. However, because condemnation statutes like sec. 84.09 command a strict construction, we conclude that the DOT's argument is not consistent with the statute.

■

Assuming without deciding that the property not needed for the right-of-way falls within a definition of "replacement lands," we conclude as a matter of law that the condemnation of this site was for the preservation of an Indian burial site, not for transportation purposes.

It should be noted that the DOT's argument might be more compelling if the acquisition of the site were required in order to acquire the Mitton right-of-way. We are not concluding that condemnation of replacement lands is never for transportation purposes. If the DOT establishes that acquisition of replacement lands is the only possible method of obtaining land necessary for transportation purposes, then the replacement lands themselves could be said to be acquired for transportation purposes. However, because the DOT has not established that acquisition of replacement lands was its only alternative, its argument fails. To conclude otherwise would essentially allow the DOT to confer

authority upon itself through its agreements with the federal government.

The DOT implies that because highway siting has become more complex, requiring the DOT to balance the public's transportation needs with environmental considerations, agricultural interests and historic and prehistoric preservation goals, we should expand the DOT's legislatively defined condemnation authority to include lands condemned in order to achieve these purposes. However, a strict construction of sec. 84.09, Stats., does not give the DOT such expansive condemnation authority, and whether its authority should be expanded to include such purposes is for the legislature to decide.[4]

Condemnation of private property is in derogation of common-law and is only authorized through express or necessarily implied legislative authority. *Maxey*, 94 Wis. 2d at 399, 288 N.W.2d at 805. Because neither sec. 85.04 nor 84.09 authorizes condemnation of the portion of the Mittons' property not needed for the right-of-way, the DOT has no authority to condemn it.

---

[4] The DOT cites a Pennsylvania case that affirms its state highway authority's condemnation of land in order to fulfill mitigation requirements under the umbrella of authority to condemn for "transportation purposes." *Appeal of Gaster*, 556 A.2d 473, 477 (Pa. 1989). It also cites a similar California case, *Golden Gate Bridge & Hwy. Trans. Dist. v. Muzzi*, 83 Cal. App.3d 707, 148 Cal. Rptr. 197 (1st Dist. 1978). Although we acknowledge these decisions, we nevertheless conclude that a strict construction of sec. 84.09 does not confer such expansive authority and it is up to the legislature to expand such authority.