DARE COUNTY BOARD OF EDUCATION, a body of politic and corporate, Plaintiff
v. ELPIS SAKARIA, Defendant

---

DARE COUNTY BOARD OF EDUCATION, a body of politic and corporate, Plaintiff
v. RAJ ALEXANDER TRUST, Elpis J.G.B. Sakaria, Trustee, Defendant

---

DARE COUNTY BOARD OF EDUCATION, a body of politic and corporate, Plaintiff
v. JERA ASSOCIATES, a Maryland Partnership, Defendant

---

DARE COUNTY BOARD OF EDUCATION, a body of politic and corporate, Plaintiff
v. JACK HILLMAN and wife, LILLIAN HILLMAN

No. COA94-739

(Filed 2 May 1995)

### 1. Eminent Domain § 24 (NCI4th)— condemnation of land for wetlands mitigation—action permitted by statute

N.C.G.S. § 115C-517 permits a local board of education to condemn land solely for use as wetlands mitigation and a source of fill.

**Am Jur 2d, Eminent Domain § 19.**

**Eminent domain: Right to condemn property owned for used by private educational, charitable, or religious organization. 80 ALR3d 833.**

### 2. Schools § 90 (NCI4th); Eminent Domain § 24 (NCI4th)— condemnation of land for wetlands mitigation—no arbitrary abuse of discretion

Plaintiff board of education's decision that defendants' lots were necessary for construction of its athletic facilities was not an arbitrary abuse of discretion where plaintiff was required to have additional lands for wetlands mitigation and as a source for fill; after plaintiff's first proposal was rejected, a committee was formed which considered forty-one sites, all of which were rejected because of cost, distance, or other reasons; in its second permit application, which was denied, plaintiff proposed areas of off-site mitigation which were also rejected by Coastal Management; and the U.S. Army Corps of Engineers and Coastal Management gave off-site mitigation a lower preference than on-

site mitigation, rejected all of the off-site mitigations proffered by plaintiff, and encouraged the proposal involving defendants' lots.

**Am Jur 2d, Schools § 79.**

Appeal by defendants from judgment entered 27 April 1994 and corrected judgment entered 25 May 1994 in Dare County Superior Court by Judge Jerry R. Tillett. Heard in the Court of Appeals 23 March 1995.

*Kellogg, White, Evans and Gray, by Ronald E. DeVeau, for plaintiff-appellee.*

*Vandeventer, Black, Meredith & Martin, by Norman W. Shearin, Jr., Robert L. O'Donnell, and R. Gregory McNeer, Jr., for defendant-appellants.*

GREENE, Judge.

Elpis Sakaria, Raj Alexander Trust, Elpis J.G.B. Sakaria, Trustee, Jera Associates, and Jack and Lillian Hillman appeal from a 27 April 1994 final judgment and 25 May 1994 corrected judgment entered in Dare County Superior Court, decreeing that the Dare County Board of Education (plaintiff) has the authority to condemn lands for construction and use of proposed school facilities. All the defendants gave notice of appeal; however, because the assignments of error and arguments in defendants' brief only relate to property belonging to defendants Sakaria and the Hillmans, we need only address those arguments. N.C.R. App. P. 10(c)(1); N.C.R. App. P. 28(b).

Plaintiff is responsible for the operation of the Cape Hatteras School (the School) in Buxton, North Carolina, which is located on the Pamlico Sound side of Hatteras Island, part of the Outer Banks. Beginning in 1985 and again in 1988, plaintiff recognized that the School needed additional athletic facilities in order to meet state and southern accreditation requirements and began efforts to expand the School's athletic facilities in 1985. Plaintiff owns a 12.5 acre tract of land which is located west of the School's campus, which includes all land from the highway to the Pamlico Sound east of defendants' lots. Therefore, defendants' lots are surrounded by plaintiff's property on three sides, and the Pamlico Sound on the fourth side. Because portions of plaintiff's land and defendants' lands are wetlands, they are within the jurisdictional bounds of the United States Army Corps of Engineers (the Corps) under Section 404 of the Clean Water Act, 33

**DARE COUNTY BD. OF EDUCATION v. SAKARIA**

[118 N.C. App. 609 (1995)]

U.S.C. § 1344 and Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 and of the North Carolina Department of Environment, Health and Natural Resources, Division of Coastal Management (Coastal Management) and subject to numerous state and federal regulations.

Plaintiff planned to use its 12.5 acre lot, which contains 3.1 acres of wetlands, to expand the School's athletic facilities. In June 1988, Coastal Management denied plaintiff's requests for a dredge and fill permit and water quality certification to make the 12.5 acre tract suitable for building athletic fields because plaintiff's proposal would result in an unacceptable loss of wetlands. A second permit application by plaintiff in 1992 was denied by both Coastal Management and the Division of Environmental Management after the coastal wetlands were realigned. On 9 February 1993, plaintiff adopted a resolution approving condemnation of defendant's six lots, lot 5 belonging to the Hillmans and lot 6 belonging to Sakaria, and submitted a proposal involving defendants' lots to the Corps on 15 February 1993. Under this proposal, defendants' lots 5 and 6 would be used only as a source of fill and for wetlands mitigation. This proposal received a conditional permit from the Corps. On 19 February 1993, plaintiff filed four separate actions in Dare County Superior Court to condemn the six lots. The four actions were consolidated, and the court conducted a bench trial on the issue of plaintiff's authority to condemn defendants' property.

At trial, Allen Burrus (Mr. Burrus), a member of plaintiff, testified that after Coastal Management denied a permit to use plaintiff's 12.5 acres for additional facilities, plaintiff "formed an ad hoc committee" which looked for available and suitable properties that were within "five miles of the facility," consisted of "eight or ten acres" and "had to be accessible by road, hard road." Mr. Burrus testified that the properties considered by the ad hoc committee were unavailable because they either did not meet the criteria necessary for school facilities, were deemed an Area of Environmental Concern, consisted of federal property belonging to the National Park Service, or were rejected by the various federal and state agencies having jurisdiction over the wetlands.

Mr. Burrus testified that in order to get a permit from the Corps, plaintiff had to mitigate damages to wetlands, and defendants' property was being offered to satisfy that mitigation "[n]ot completely but

at least partly." Plaintiff's proposal, which included using defendants' lots, received a conditional permit from the Corps. Under plaintiff's proposal, of the 1.8 acres necessary to satisfy the requirement of wetlands mitigation, "approximately a half an acre" of lots 5 and 6 would be used, with property owned by plaintiff supplying the remaining 1.3 acres necessary for mitigation. Mr. Burrus stated that plaintiff's ad hoc committee had "looked for complete sites" and, therefore, had not searched "for alternatives to find a half acre that can be offered for mitigation." Mr. Burrus agreed that there are numerous parcels within Dare County that would contain a half acre of property that could be used to satisfy the mitigation requirement, but because the agencies presented to plaintiff "in verbal exchanges more than once" that on-site mitigation would increase its chances of obtaining a permit, plaintiff looked for "on-site, on-kind mitigation." Mr. Burrus agreed, however, that the Corps permitted off-site mitigation. When asked whether plaintiff considered establishing the half acre of wetlands on property plaintiff already owned, Mr. Burrus replied, "Yes, sir, there was. . . . They just—they never gave us a yes on that. They gave us a yes on this particular scenario [involving defendants' properties] and that's it. And we offered them quite a few scenarios."

George Wood (Mr. Wood), an environmental consultant, testified that he was on the ad hoc committee that looked at forty-one possible sites for the proposed athletic fields. In the second application, plaintiff requested authorization to use a site south of Canadian Hole for off-site mitigation, but the request was denied by Coastal Management. Mr. Wood stated he did not know all the reasons for the denial, "but one of the considerations was that there was concern about off-site mitigation, that the preference of the state agencies was for mitigation which was closer to the development site." On-site means "near the site" where the impacts are. He explained that although off-site mitigation is permitted under the federal regulations, "it is not the highest preference" because the Corps prefers "to have at least the mitigation done in the same system as the unavoidable impacts are done. . . . [I]f there is the opportunity for a higher level of practicable mitigation, higher level in their priority of consideration, that you should use the highest level of mitigation practicable." Mr. Wood testified that the forty-one sites considered by the ad hoc committee were first viewed for use as the facilities, and "they were subsequently reviewed again for sites for mitigation, so we visited each site twice." None of the sites, however, were appropriate for various reasons, including distance, expense, unsuitability, or

DARE COUNTY BD. OF EDUCATION v. SAKARIA

[118 N.C. App. 609 (1995)]

unavailability. Mr. Wood also stated that in considering defendants' lots:

> We were trying to meet all the regulatory requirements, site-development requirements and we were trying as best we could to duplicate uses for as much of the property as possible so we could meet the minimization, so that we could meet the requirements of the mitigation not only by the Corps of Engineers but by the state agencies and so that we could meet the requirements of environmental management and other regulatory agencies that were all tugging on this application in different ways. So we felt that the proposed plan—in fact, we were encouraged by the agencies that the proposed plan had merit and that we should advance it and we did and we received approval. . . . [T]he school board advanced the application, but it was advanced at the advice and the consultation with the state and federal agencies, so it was—it was a negotiated application certainly.

He testified that plaintiff advanced its proposal involving defendants' lots to meet the Corps' requirements "to minimize wetland impacts and then to adequately mitigate under their sequence of preference" and to comply with applicable regulations. Mr. Wood also testified that he did not think Coastal Management "rejected the consideration of off-site mitigation. We certainly pursued it, continued to pursue it."

After making findings of fact, the trial court, in its order filed 27 April 1994, concluded plaintiff "has the authority to take the lands of" defendants by condemnation. The court also concluded the lands described in the complaints are necessary for the construction of the school facilities proposed by plaintiff and the uses of portions of the property for wetlands mitigation and a source of fill are necessary for the construction of the school facilities proposed and clearly implied in the condemnation authority of plaintiff. The trial court therefore ordered that plaintiff has the authority to condemn defendants' lots, vested title to defendants' properties in plaintiff, and ordered the Dare County Clerk of Superior Court to disperse the deposits made by plaintiff pursuant to N.C. Gen. Stat. § 40A-41 to each of the defendants "as a credit upon the amount of compensation to be determined and provided by law." The court then entered a corrected judgment "to include the specific descriptions of the lands affected and of the property acquired by" plaintiff.

The issues presented are (I) whether N.C. Gen. Stat. § 115C-517 permits a local board of education to condemn land solely used as wetlands mitigation and a source of fill; and (II) if so, whether plaintiff's action of condemning lots 5 and 6 as necessary to build athletic facilities was an arbitrary abuse of discretion.

I

[1] Defendants first argue that taking lots 5 and 6 only "for mitigation and as a source of fill is neither authorized by the limited grant of authority contained in N.C.G.S § 115C-517 nor clearly implied by that grant" because such uses are not "to construct any 'school facility.' " We reject this argument.

Eminent domain is the "power of the State or some agency authorized by it to take or damage private property for a public purpose upon payment of just compensation," and the manner in which eminent domain may be exercised is prescribed by our General Assembly. *Highway Comm'n v. Matthis*, 2 N.C. App. 233, 238, 163 S.E.2d 35, 38 (1968). Because the exercise of the power of eminent domain is in derogation of property rights, all laws conferring this power must be strictly construed; therefore, statutory grants of the power of eminent domain are "limited to the express terms·or clear implication of the act or acts in which the grant of the power of eminent domain is contained." *Id.*

Local boards of education possess the power of eminent domain and have broad discretion to condemn under Chapter 40A of the General Statutes a "suitable site or right-of-way" for "a school, school building, school bus garage or for a parking area or access road suitable for school buses or for other school facilities" whenever the board is unable to acquire or enlarge the suitable site or right-of-way by gift or purchase. N.C.G.S. § 115C-517 (1994). "[T]he determination of the local board of education of the land necessary for such purposes shall be conclusive" provided that no more than a total of fifty acres for one site is condemned. *Id.* Plaintiff, therefore, has the discretion under Section 115C-517 to determine what land constitutes a "suitable site" to construct its athletic facilities and what land is "necessary" to construct its athletic facilities, which may, depending on the circumstances of a particular case, encompass more than the actual land on which the athletic facility sits. Plaintiff, therefore, had the discretion under Section 115C-517 to determine that lots 5 and 6 are "necessary" to construct its proposed athletic facilities.

II

[2]   Under Section 115C-517, the courts are bound by the discretionary decision of a local board of education in selecting and determining the land necessary to construct a school, school building, school bus garage, a parking area, an access road suitable for school buses or "other school facilities" unless that decision is an "arbitrary abuse of discretion or disregard of law." *Board of Educ. v. Allen*, 243 N.C. 520, 523, 91 S.E.2d 180, 183 (1956) (discussing predecessor to 115-517); *see also Department of Transp. v. Overton*, 111 N.C. App. 857, 859, 433 S.E.2d 471, 473 (1993); *Guyton v. Board of Transp.*, 30 N.C. App. 87, 90, 226 S.E.2d 175, 177 (1976). A discretionary act is an arbitrary abuse of discretion when it is "not done according to reason or judgment, but depending upon the will alone" and "done without reason." *In re Housing Auth.*, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1952); *Wyatt v. Hollifield*, 114 N.C. App. 352, 358, 442 S.E.2d 149, 153 (1994) (abuse of discretion means action so arbitrary it could not have been result of a reasoned decision).

Defendant argues that plaintiff's decision to use lots 5 and 6 only for wetlands mitigation and as a source of fill is arbitrary and capricious because "there were alternate sources available to meet [plaintiff]'s mitigation needs," and plaintiff did not explore available off-site mitigation alternatives. We disagree.

The evidence in this record shows that because the area on Hatteras Island on which plaintiff is proposing to build an athletic facility is an ecologically sensitive area containing a significant portion of wetlands which are under the jurisdiction of the Corps and Coastal Management and subject to other federal and state agencies, plaintiff cannot construct its proposed athletic facility without having additional land for wetlands mitigation and as a source for fill. For mitigation purposes, plaintiff has to create wetlands to replace the acre of wetlands which was to be filled under its proposal. The evidence also shows that after plaintiff's proposal in its first permit application was rejected, plaintiff formed a committee and considered forty-one sites as "complete sites" and for mitigation purposes, all of which were rejected because of cost, distance, or other reasons. In its second permit application, which was denied, plaintiff proposed areas of off-site mitigation which were also rejected by Coastal Management. Although plaintiff was aware that off-site mitigation was permitted and there were other sources of fill on Cape Hatteras, the Corps and Coastal Management gave off-site mitigation a lower

preference than on-site mitigation, rejected all of the off-site mitigations proffered by plaintiff, and encouraged the proposal involving lots 5 and 6, which would provide on-site mitigation. Although there is evidence that alternate sites were available which plaintiff did not consider, we cannot say on this record that plaintiff's decision to condemn lots 5 and 6 was "not done according to reason or judgment, but depending upon the will alone" and "done without reason." Therefore, plaintiff's decision that lots 5 and 6 are necessary for construction of its athletic facilities was not an arbitrary abuse of discretion.

Defendants also argue in their brief that the trial court "clearly erred in finding that [plaintiff] made a good faith effort to acquire all six lots by purchase as required by N.C.G.S. § 115C-517." Because, however, defendants did not assign this finding as error, we need not address this argument. N.C.R. App. P. 10(c)(1). For these reasons, the decision of the trial court is

Affirmed.

Judges LEWIS and MARTIN, MARK D., concur.