751 A.2d 633

THE STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF, v. TRAP ROCK INDUSTRIES, INC., A CORPORATION OF NEW JERSEY; RUBEROID CO., A DEFUNCT CORPORATION OF NEW JERSEY; STATE OF NEW JERSEY; TOWNSHIP OF HAMILTON, IN THE COUNTY OF MERCER, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

Decided February 3, 2000.

*Drew K. Kapur*, Deputy Attorney General, for plaintiff the State of New Jersey, Commissioner of Transportation (*John J. Farmer, Jr.*, Attorney General of the State of New Jersey).

*Stacey D. Roth* for defendant Trap Rock Industries, Inc. (*Drinker, Biddle & Shanley, LLC*, attorneys; *Vincent E. Gentile* of counsel).

FEINBERG, A.J.S.C.

The issue presented to the court is whether the Commissioner of Transportation is vested with the statutory authority to condemn private property for purposes of environmental mitigation. On May 7, 1999 plaintiff, the State of New Jersey, by the Commissioner of Transportation, filed a verified complaint against defendants, Trap Rock Industries, Inc., Ruberoid Co. (a defunct New Jersey Corporation) and the Township of Hamilton, in an action for condemnation. The record owner of the condemned property is Trap Rock Industries, Inc. ("Trap Rock"). On September 20, 1999, Trap Rock filed an answer challenging the authority of the State to condemn Trap Rock's property.

The action involves a highway construction project in Mercer County known as the Route 29 Project ("the Project"). The Project proposes the construction of a new four lane limited access roadway to complete the original "Trenton Complex" by linking

the Route 29 Freeway to Route 129. The proposed construction of the roadway resulted from a determination by the Department of Transportation ("DOT") that the Project was necessary to alleviate severe traffic congestion in the area, to provide a "linkage" between roadways and to address safety concerns.

Before choosing a design for the project, the DOT developed, examined and evaluated many construction design alternatives against certain specific criteria. The criteria included the following considerations:

 a. Complete the missing link of Route 29;

 b. Restore Lamberton [Road] to a neighborhood street;

 c. Ensure safe, easy, and attractive access to the riverfront;

 d. Enhance the riverfront recreation area; and

 e. Minimize socioeconomic and environmental impacts, including filling the Delaware River.

> [Brief of Plaintiff, Cunningham Certification, December 20, 1999, p. 4.]

Before the current project design was chosen, approximately eleven (11) other conceptual design alternatives were developed and evaluated. However, each of these eleven alternatives failed to meet the established criteria and were considered incompatible with Mercer County's plans for the Delaware River waterfront. Eventually, the DOT determined that "Alternative C" was the preferred construction design.

The Project involves construction activities in and along the Delaware River. Although efforts have been made to minimize the construction activities in and along the Delaware River, a portion of the proposed southbound travel lanes and exit ramp to Lalor Street will impact areas of shallow water habitat along the Delaware River. A portion of the proposed southbound travel lanes and southbound exit ramp to Lalor Street in the City of Trenton will impact areas of shallow water habitat along the Delaware River and the roadway and ramp will impact portions of vegetated shoreline.

To compensate for the lost habitat, the DOT proposed a mitigation plan to create a shallow water habitat area and to preserve

the shoreline habitat. In fact, the mitigation is a specific condition imposed by the United States Army Corps of Engineers Section 404 ("ACOE") and New Jersey Department of Environmental Protection Waterfront Development ("NJDEP"). The Supervising Planner of the New Jersey Department of Transportation and the Environmental Team Leader for Group 6 of the Project Management Section certified that the application and approval process regarding the environmental permits for the project was time consuming and lengthy.

The record reflects that the DOT considered all properties along the Delaware River, above the northern project limit (the Amtrak Bridge) to a point north of the Scudders Falls Bridge. Apparently, none of these sites met the ACOE and NJDEP criteria. Additionally, the DOT considered properties on the Delaware River below the southerly limit of the Project, situated at the junction of Routes 29 and 129. Some of these properties, particularly the Marine Terminal Park, the Mercer County Boat Launch, the Hamilton Yacht Club, and the Public Service Energy and Gas Generating Station, are improved and in use. Most of the properties below the Project's southerly limit, however, are unimproved and environmentally sensitive.

Eventually, the DOT decided to build the shallow water habitat on Trap Rock's property, located at Block 2506, Lot 4, in the Township of Hamilton. Trap Rock's property is vacant, unimproved, unoccupied and situated between Lamberton Road and the Delaware River. Trap Rock's property is located 4,300 feet south of the southern end of the Project, and borders Lamberton Road and a salvage yard to the north, the Delaware to the south, and wooded, unimproved properties to the east and west. The NJDEP and ACOE eventually issued permits to the DOT, with certain conditions based upon the approved mitigation plan. The plan approved the acquisition of Trap Rock's property. Accordingly, the DOT instituted condemnation proceedings to take Trap Rock's property for this use. The NJDEP and ACOE conditions require that the mitigation plan provide for:

a. Replacement of shallow water habitat;

b. Presentation of a schedule of activities leading to completion of the mitigation program;

c. Identification of a scaled drawing of the location of the proposed mitigation site, the layout of the mitigation site, the existing and proposed elevations of the mitigation site, the existing and proposed elevations of the mitigation site, the relationship between the surface of the mitigation site and the elevation of the mean high and mean low water, the nature of the proposed substrate material, and the density and distribution of species to be planted or seeded;

d. Identification of the location of the disposal sites for the material excavated from the mitigation site;

e. Preparation of a post-creation monitoring plan with proposed methodology to assess functions and value of created habitat as compared with that to be impacted; and

f. Identification and extent of the area to be preserved as compensation for impacts to vegetated riparian edge habitat.

[Brief of Plaintiff, Green Certification, January 5, 2000, pp. 6–7.]

The mitigation plan included "Special Condition 19" mandating that Fish and Wildlife, EPA, and the National Marine Fisheries be given the opportunity to review and comment on the Mitigation Plan before the ACOE would grant final approval.

In November, 1998, the environmental agencies granted final approval to the DOT's mitigation plan. The approved mitigation plan provided for the creation of 1.36 acres of shallow water habitat and conversion of nearly all of the subject property, except for a 13 foot wide strip of land along the entire length of the subject property. According to the DOT, the Legislature has conferred to it the authority to condemn Trap Rock's property for purposes of environmental mitigation in connection with its construction of a limited access highway. To support their position, the DOT cites *N.J.S.A.* 27:7–21(e), *N.J.S.A.* 27:7–3 and *N.J.S.A.* 27:1A–1. These statutory references, in part, provide that the DOT has the authority and duty to improve and lay out new rights of way so that it may accomplish the task of promoting an efficient, fully integrated, and balanced transportation system for New Jersey. Importantly, the DOT submits the Legislature has vested in its Commissioner broad powers necessary to effectuate the goals, intent and underlying policy of Title 27, and that among

these broad powers is the authority to acquire private lands through condemnation.

It is undisputed that the construction of the new limited access highway will impact areas of shallow water habitat along the Delaware River, and the construction's actual roadway and ramp will impact portions of vegetated shoreline. To compensate for this lost habitat, the ACOE and NJDEP, whose permits are necessary for the DOT's construction along the Delaware River, have required the DOT to use environmental mitigation and build a replacement shallow water habitat to compensate for the lost habitat. Accordingly, the DOT argues that its power to condemn private property naturally includes condemnation of the actual property on which the roadway will be built, as well as other property necessary, albeit incidental, to the actual traveled way.

Not surprisingly, Trap Rock contends that the DOT lacks the statutory authority to condemn Trap Rock's property in the instant case. Trap Rock concludes that the Limited Access Highway Act limits the authority of the DOT to condemn property which is "(1) property required for the traveled way or (2) property necessary or desirable for the service, maintenance and protection of the highway ...." Brief of Defendant, November 19, 1999, p. 10. Put simply, Trap Rock's position is that the Limited Access Highway Act does not authorize the DOT to take property for purposes incidental or ancillary to the actual roadway itself, or in addition to those specifically enumerated reasons provided in the statute. As a result, Trap Rock concludes that the DOT lacks the authority to take Trap Rock's property for purposes of environmental mitigation.

The Legislature has vested the Commissioner of the Department of Transportation with, among other enumerated powers, duties and responsibilities, the authority to condemn private property for purposes of the maintenance and construction of state highways. The issue before this court is whether the Commissioner's power to condemn includes the authority to condemn private property for purposes of environmental mitigation when

such environmental mitigation is incidental, yet necessary, for the construction of a limited access highway. Based on the following analysis, the court finds that it does.

The Commissioner's power to condemn emanates from various portions of the Transportation Act of 1966, *N.J.S.A.* 27:1A–1–42 (the "Transportation Act"). Therefore, at the outset, a brief review of the pertinent statutory provisions is necessary for a more complete understanding of the matter before the court.

Through Title 27 of the New Jersey Statutes, which is also referred to as the Transportation Act, the Legislature established the Department of Transportation itself as well as the Department's many purposes, functions, powers, and duties. The purpose and intent of the Transportation Act is to

[ (1) ] [E]stablish the means whereby the full resources of the State can be used and applied in a coordinated and integrated matter to solve or assist in the solution of the problems of all modes of transportation;

[ (2) ] to promote an efficient, fully integrated and balanced transportation system for the State;

[ (3) ] to prepare and implement comprehensive plans and programs for all modes of transportation development in the State; and

[ (4) ] to coordinate the transportation activities of State agencies, State-created public authorities, and other public agencies with transportation responsibilities within the State.

[*N.J.S.A.* 27:1A–1.]

Further, as with the other state administrative agencies, the Legislature has charged the Commissioner of the Department of Transportation with those functions, powers and duties necessary to effectuate the Transportation Act. Included in these express functions is the authority to

Do any and all things necessary, convenient or desirable to effectuate the purposes of P.L.1966, c. 301 (C.27:1A–1 et seq.) and to exercise the powers given and granted in that act.

[*N.J.S.A.* 27:1A–5(*l* ).]

Moreover, regarding the Commissioner's maintenance and construction of state highways in general, the Legislature has vested the Commissioner with the authority to "lay out, open and improve new roads over acquired right of ways." *N.J.S.A.* 27:7–3.

To accomplish this, the Commissioner may condemn private property. The Legislature instructs that "[t]he commissioner may acquire lands or rights therein whether for immediate or future use by gift, devise or purchase, or by condemnation in the manner provided in chapter 1 of the Title Eminent Domain ...." *N.J.S.A.* 27:7–22.

Indeed, it is clear that, based on the foregoing, the Commissioner may condemn private property for purposes of building new state highways.[1] Moreover, the Legislature has made it abundantly clear that the Commissioner's powers in condemning private property for purposes of building and maintaining state highways are broad. For instance, regarding the acquisition and construction of state highways, *N.J.S.A.* 27:7–21 specifies additional powers vested in the Commissioner. Among other powers enumerated in this statutory section, the Legislature states that the Commissioner may "[d]o whatever may be necessary or desirable to effectuate the purposes of [the Transportation Act]." *N.J.S.A.* 27:7–21j.

Case law supports a broad interpretation of the Commissioner's general powers under the Transportation Act. It is true that our state courts have recognized that the power to condemn is to be "strictly construed." That is, "[t]he power of condemnation being in derogation of private property rights, it is required to be strictly construed and all statutory prerequisites must be established to sustain its exercise." *New Jersey Highway Auth. v. Currie*, 35 *N.J.Super.* 525, 540, 114 *A.*2d 587 (App.Div.1955). Nonetheless, the general powers to condemn for purposes of state highways "should be liberally construed to reflect [Title 27's] purpose, the building of state highways." *State v. Maas & Waldstein Co.*, 83 *N.J.Super.* 211, 217, 199 *A.*2d 248 (App.Div. 1964).

---

[1] Of course, the DOT's power to condemn is subject to any limitations under the Eminent Domain statute and Article I of New Jersey State Constitution.

■ In the instant matter, Trap Rock does not submit that the Commissioner's general powers to condemn private property under the Transportation Act are not broad. Instead, Trap Rock submits that the Commissioner's general powers to condemn are inapplicable to constructing limited access highways. Trap Rock contends that the Legislature has curtailed the Commissioner's power to condemn when dealing with limited access highways specifically.

*N.J.S.A.* 27:7A–1 through 27:7A–10 is a portion of the Transportation Act which the Legislature has dedicated specifically to limited access highways. A "limited access highway" is defined as "a highway especially designed for through traffic over which abutters have no easement or right of light, air or direct access, by reason of the fact that their property abuts upon such way[.]" *N.J.S.A.* 27:7A–1a.

■ Trap Rock specifically contends that the Legislature has not conferred the DOT with the power to condemn property for purposes of environmental mitigation when the highway to be constructed is a limited access highway. In support of this proposition, Trap Rock cites *N.J.S.A.* 27:7A–3 and –4.1 as evidence that the Legislature intended to place limitations on the Commissioner's power to condemn private property for purposes of building limited access highways. *N.J.S.A.* 27:7A–3a provides, in pertinent part, that

Property needed for any limited access highway is declared to be all those lands or interests therein required for the traveled way together with those lands or interests therein necessary or desirable for service, maintenance and protection of the present and future use of the highway, including those lands or interests therein necessary or desirable in connection with grade separations, connecting roadways at an intersection with another main highway, land between roadways, occasional parking areas, treatment of borders and landscape areas, recreational facilities, parallel service roads and railroad crossing eliminations or relocations . . . .

Moreover, *N.J.S.A.* 27:7A–4.1 provides, in pertinent part, that

In connection with the acquisition of property or property rights for any limited access highway or portion thereof, the commissioner, with respect to limited access highways under his jurisdiction, and the governing body of a county, with respect

to limited access highways under its jurisdiction, may, in his or its discretion, acquire by gift, devise, purchase or condemnation, an entire lot, block or tract of land, if, by so doing, the interests of the public will be best served even though said entire lot, block or tract is not needed for transportation purposes, but only if the portion not needed for transportation purposes is landlocked or is so situated that the cost to the State will be practically equivalent to the total value of the whole parcel of land.

Trap Rock construes *N.J.S.A.* 27:7A–3 and –4.1 as limiting the Commissioner's power to condemn. Trap Rock submits that these sections confine the Commissioner's authority to condemn private property to the acquisition of property only for the actual traveled way and property necessary or desirable for the service maintenance and protection of the highway. Trap Rock opines that because these sections do not specifically *list* environmental mitigation as property needed for a limited access highway, the Commissioner does not have the power to condemn for purposes of environmental mitigation.

The court does not join Trap Rock in what appears to be a rather strained reading of the Commissioner's authority to condemn property for purposes of constructing limited access highways. Rather, Trap Rock's interpretation fails under traditional canons of statutory construction.

It is the court's obligation to give effect to the Legislature's intent, and "[t]he clearest indication of an Act's meaning is its plain language." *County of Camden v. South Jersey Port Corp.*, 312 *N.J.Super.* 387, 396, 711 *A.*2d 978 (App.Div.), *certif. denied*, 157 *N.J.* 542, 724 *A.*2d 801 (1998) (citing *National Waste Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997)). It is well-settled that principles of statutory construction direct the courts to look first to the plain meaning of a statute to derive the statute's meaning, absent a specific indication that legislative intent mandates an alternative reading. *Town of Morristown v. Woman's Club of Morristown*, 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991). Unless otherwise specified or indicated, words are to be given their "ordinary and well-

understood meaning." *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 556, 362 *A.*2d 13 (1976).

However, it is also well-settled that a court cannot interpret a statute in such a way that would frustrate the legislative purpose and intent underlying that statute. Our Supreme Court has held that "[i]n the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent in enacting a statute." *Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994). The Court has also reaffirmed the proposition that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as consonant to reason and good discretion." *Ibid.* (internal quotations and citations omitted). Also significant, the Court has explained that when interpreting a statute, "[i]n discerning [Legislative] intent we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part." *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987) (citations omitted).

Unquestionably, Trap Rock's interpretation of the DOT's power to condemn property for purposes of constructing limited access highways would frustrate the purposes and intent of the Transportation Act. As previously explained, one of the express purposes of the Transportation Act is to "establish the means whereby the full resources of the State can be used and applied in a coordinated and integrated matter to solve or assist in the solution of the problems of all modes of transportation ... [and] to promote an efficient, fully integrated and balanced transportation system for the State[.] ..." *N.J.S.A.* 27:1A–1. The DOT is also charged with the specific task of laying out, opening and improving new roads over acquired right of ways. *N.J.S.A.* 27:7–3. To accomplish these goals, the Commissioner may acquire necessary property by condemnation. *N.J.S.A.* 27:7–22. If, consistent with Trap Rock's arguments, the DOT were precluded from acquiring property through condemnation for purposes of satisfaction of environmental mitigation which is necessary for the construction of a

highway, then the DOT's ability to construct highways and roadways for purpose of "promot[ing] an efficient, fully integrated and balanced transportation system for the State" would be seriously impeded. Such an impediment is contrary to the clear Legislative intent articulated in the Transportation Act.

Based on the Legislature's own language, there can be no doubt that the Legislature intended to grant the DOT broad authority to accomplish its enumerated duties. Again, the Legislature has stated that the Commissioner may "[d]o any and all things necessary, convenient or desirable to effectuate the purposes of P.L. 1966, c. 301 (C.27:1A–1 et seq.)[the Transportation Act] and to exercise the powers given and granted in that act." *N.J.S.A.* 27:1A–5(*l* ).

Further, Trap Rock's contention that in passing the "Limited Access Highway Act," and in particular *N.J.S.A.* 27:7A–3 and –4.1, the Legislature intended to place certain restrictions on the Commissioner's authority to acquire property through condemnation for construction of limited access highways is contrary to the Act's plain language, is contrary to Legislative intent and would prevent the DOT from performing its duties under the Transportation Act. This is true based on numerous reasons. First, there is no support for the contention that the Commissioner's broad powers under the Transportation Act are inapplicable when the construction is a limited access highway as opposed to any other roadway. To the contrary, *N.J.S.A.* 27:7A–9, which is found in the Limited Access Highway Act, provides that

The powers contained in this act are in addition to all the powers that the commissioner has at the time this act becomes effective and in addition to the powers granted to him by the "State Highway Access Management Act," P.L.1989, c. 32 (C.27:7–89 et seq.), and any limitation herein contained shall be interpreted as applying only to limited access highways created under this act.

Clearly, from the first portion of the foregoing section, it is clear that the Legislature had no intention of curbing the Commissioner's general powers stated in the Transportation Act when the Limited Access Highway Act was passed. Nonetheless, Trap Rock reads the last portion of the foregoing statute as evidence

that the Legislature curtailed the Commissioner's powers under the Limited Access Highway Act. Trap Rock is correct in its assertion that the Limited Access Highway Act contains limitations. However, the limitations are clearly and unambiguously defined. These include limitations such as the restriction of use of limited access highways under *N.J.S.A.* 27:7A–6 and the prohibition of commercial activities by the Commissioner under *N.J.S.A.* 27:7A–8. There is no evidence which would support the idea that the last phrase serves to limit the Commissioner's ability to condemn.

Second, there is no support for Trap Rock's contention that *N.J.S.A.* 27:7A–3 contains an exhaustive list of what properties are "necessary" for a limited access highway. Consistent with the Legislative intent underlying the Transportation Act, "all those lands or interests therein required for the traveled way" includes lands *necessary* for constructing the traveled way. Thus, pursuant to this interpretation, *necessary* lands may be incidental to the *actual* roadway. It is undisputed that the DOT needs to acquire property for purposes of environmental mitigation. Therefore, in light of the Legislative purpose underlying the Transportation Act, the need to acquire Trap Rock's property for construction of the limited access highway falls under the language of *N.J.S.A.* 27:7A–3.

On the other hand, a literal and narrow reading of the phrase, "[p]roperty needed for any limited access highway is declared to be all those lands or interests therein required for the traveled way," would frustrate the stated Legislative purpose of the Transportation Act.

Third, there is no support for Trap Rock's assertion that *N.J.S.A.* 27:7A–4.1 limits the Commissioner's otherwise broad condemnation powers. To the contrary, this section simply allows the Commissioner to take an entire lot or block of land, even when the entire lot or block is not necessary for "transportation" purposes. This cannot be read to be as a statement of the Commissioner's only authority in acquiring lands, through sale,

gift, condemnation, or otherwise, for limited access highways. In fact, this section appears to actually expand the Commissioner's powers by allowing the Commissioner to take *more* property for purposes of limited access highways than is necessary.

Thus, this court's reading of the Commissioner's powers under the Limited Access Highway Act, in light of the Legislative intent and purpose of the Transportation Act, leads to the conclusion that the Commissioner's power to condemn includes condemnation for environmental mitigation.

■ Trap Rock also challenges the DOT's authority to condemn its property on the basis that the DOT does not "need" Trap Rock's property specifically for satisfaction of the DOT's mitigation requirement, and that the DOT could have chosen a construction design which avoided a need for environmental mitigation altogether. However, there is no legal or factual basis to support these contentions and the record supports a contrary conclusion.

More specifically, the evidence supports the conclusion that the DOT has demonstrated that it needs the subject property for the completion of the Route 29 Project. As explained in the Certification of Robert J. Cunningham, Manager, Geometric Design of the DOT, the DOT determined that the Route 29 Project was necessary to alleviate severe traffic congestion in the area, to provide a "linkage" between roadways and to address safety concerns. There does not seem to be any dispute whatsoever that there is a need for this construction.

Moreover, several construction design alternatives were developed and evaluated with respect to their ability to meet specific criteria, including:

a. Complete the missing link of Route 29;

b. Restore Lamberton [Road] to a neighborhood street;

c. Ensure safe, easy, and attractive access to the riverfront;

d. Enhance the riverfront recreation area; and

e. Minimize socioeconomic and environmental impacts, including filling the Delaware River.

[Brief of Plaintiff, Cunningham Certification, dated December 20, 1999, p. 4.]

Before the current project design was chosen, approximately eleven (11) other conceptual design alternatives were developed and evaluated. However, each of these eleven alternatives failed for reasons such as a failure to meet project objectives and incompatibility with Mercer County's plans for the Delaware River waterfront. Furthermore, it is undisputed that once the design was chosen, the ACOE and NJDEP required the DOT to identify a proposed mitigation site for the creation and preservation of shallow water habitat and intertidal shoreline before the ACOE and NJDEP would issue necessary permits for the Route 29 Project. After an extensive search for a mitigation site along the Delaware River, the DOT finally decided upon the subject property. Based upon the representations of the DOT, there is no reason to believe that the DOT has condemned any more property than is necessary to satisfy its mitigation requirements.

Furthermore, if the DOT were prohibited from using its powers of eminent domain to acquire Trap Rock's property in this instance, then the DOT would be forced to seek alternative property for purposes of environmental mitigation. Aside from the fact that the DOT appears to have exhausted its alternative potential sites for such environmental mitigation, the DOT would face the same dilemma with another property owner as with Trap Rock. In other words, if the DOT is precluded from condemning Trap Rock's property for purposes of environmental mitigation, then it would be precluded from taking any other private property for purposes of environmental mitigation.

In addition, the court is not in a position to second guess the DOT's choice of construction design. As the New Jersey Supreme Court has explained, "in condemnation proceedings the quantity of land to be taken, its location, and the time of taking are within the discretion of the body endowed by the legislature with the right of eminent domain." *City of Newark v. New Jersey Turnpike Auth.*, 7 *N.J.* 377, 385, 81 *A.2d* 705 (1951). Thus, the DOT's decisions, especially those concerning choices within its agency expertise are subject to discretion from this

court.[2]  Only if a decision is arbitrary, in bad faith, or capricious may the court disrupt the agency's decision.[3]  There is no allegation that any of these exist concerning the DOT's decision regarding its choice of construction plans.

It is worth noting that the question of whether or not condemning property for purposes of environmental mitigation is a proper exercise of the DOT's powers of eminent domain is a novel issue in this state.  Although this issue has not been addressed in any reported New Jersey decision, it has been addressed in other states' case law.  A few decisions are worth noting for purposes of understanding the common rationale which courts have used in dealing with issues similar to those posed in the instant matter.  In three of the following cases, the courts held that the condemnation was properly within the condemnor's authority, and in the last of the cases, the court held that the condemnor lacked the authority to condemn the subject property.

In a North Carolina case, the Court of Appeals held that the use of condemned land for use as wetlands mitigation and source of fill was "necessary" for construction, even the proposed construction would not actually sit on the condemned property.  *Dare County Bd. of Educ. v. Sakaria*, 118 *N.C.App.* 609, 456 *S.E.*2d 842 (1995).  In that case, a county board of education had the authority to condemn lands for the construction and use of school facilities.  The board recognized that one of its schools was in need of additional athletic facilities.  The land on which plaintiff sought to

---

[2] *See Outland v. Board of Trustees*, 326 *N.J.Super.* 395, 400, 741 *A.2d* 612 (App.Div.1999) (holding that court will only reverse an administrative agency's decision if it is arbitrary, capricious or unreasonable, and that court must defer to an agency's expertise and superior knowledge of a particular field).

[3] Of course, the court recognizes that its discretion is only limited to questions within the purview of agency expertise, such as choices of construction design for state highways.  The court's discretion "is not 'simply a pro forma exercise in which [the court] rubber stamp[s] findings that are not reasonably supported by the evidence.' "  *Outland, supra*, 326 *N.J.Super.* at 400, 741 *A.2d* 612 (citations omitted).  And, the court is "not bound by an agency's interpretation of a statute, if it is contrary to legislative intent and plain meaning of the statute."  *Ibid.*

build the new fields included defendants' land. Portions of plaintiff's land and defendants' lots were wetlands, and therefore within the jurisdiction of the ACOE, other federal agencies, and the North Carolina Department of Environment. Plaintiff planned to use its land to expand the school's athletic facilities, and plaintiff was originally denied the authority to do so because it would result in a loss of wetlands. Plaintiff amended its plans to use some of defendants' lots as a source of fill and for wetlands mitigation, and eventually received a conditional permit.

North Carolina's General Statutes provide boards of education with the power of eminent domain. Under these statutes, boards of education possess broad discretion to condemn. *Id.* at 846. The board of education was granted power to take a " 'suitable site or right-of-way' for 'a school, school building, school bus garage or for a parking area or access road suitable for school buses or for other school facilities' whenever the board is unable to acquire or enlarge the suitable site or right-of way by gift or purchase." *Ibid.* (citations omitted). Pursuant to this, the court found that the plaintiff had the discretion to determine whether certain land was necessary to construct its proposed facilities. The court explained that in some instances, what plaintiff could deem as "necessary" may "encompass more than the actual land on which the athletic facility sits." *Dare County Board of Education, supra,* 456 *S.E.*2d at 846.

Significantly, the court explained that

> The evidence in this record shows that because the area on Hatteras Island on which plaintiff is proposing to build an athletic facility is an ecologically sensitive area containing a significant portion of wetlands which are under the jurisdiction of the [ACOE] and Coastal Management and subject to other federal and state agencies, plaintiff cannot construct its proposed athletic facility without having additional land for wetlands mitigation and as a source for fill. For mitigation purposes, plaintiff has to create wetlands to replace the acre of wetlands which was to be filled under its proposal.
>
> [*Ibid.*]

Similarly, in the Pennsylvania case of *In re Condemnation by the Commonwealth of Pennsylvania,* 124 *Pa.Cmwlth.* 314, 556 *A.*2d 473 (1989), the court held that Department of Transportation

had the authorization to condemn the subject property for purposes of environmental mitigation. In that case the Department of Transportation sought to condemn the subject property " 'for limited access transportation purposes and to acquire property to replace wetlands adversely affected' by the construction of Legislative Route 1010[ ]." *Id.* at 474. Among other reasons for its holding that the Department of Transportation had the authority to condemn the subject property for purposes of environmental mitigation, the court explained that the condemnation of the subject property was authorized under Section 2003(e)(1) of Pennsylvania's Administrative Code. Section 2003(e)(1) provides, in pertinent part, that the Department was authorized to condemn property for " 'all transportation purposes.' " *Id.* at 477. The court explained that this phrase had been interpreted to mean that

"[I]f the purpose of the condemnation is in furtherance of [the Department's] responsibility to provide a fast, safe and efficient transportation system in the Commonwealth with due regard to public health and safety, then [the Department] has the authority and the duty to proceed with that condemnation if it is incidental to the reconstruction, repair or maintenance of a State designated highway."
[*Ibid.* (citations omitted).]

Based on this, the Pennsylvania court held that

[B]ecause the Department must mitigate wetlands damaged in order to receive federal funds necessary for the construction of [the proposed highway], a nexus exists between the Department's condemnation of the [subject] property and the [highway] project sufficient to bring that condemnation within the "all transportation purposes" requirement of Section 2003(e)(1).
[*Ibid.*]

In *Golden Gate Bridge, Highway and Transportation District v. Muzzi,* 83 *Cal.App.*3d 707, 148 *Cal.Rptr.* 197, 200 (1978), a California court held that the transit district's power to condemn property for water transportation implicitly included the power to condemn property necessary for mitigation of the environmental effects caused by the water transportation project. In that case, the transit district had the power to condemn property necessary for water transportation. However, construction of a ferry terminal adversely impacted the environment. The construction of the facilities for water transportation involved the approval and acquisition of permits from numerous governmental agencies. As

conditions to their approval, these agencies required that environmental mitigation measures be taken. Consequently, the district sought to condemn certain private property in connection with the construction of a ferry terminal for purposes of satisfaction of environmental mitigation. The owners of the large tract of property argued that the transit district did not have the power to condemn its property in this case.

The court held that the transit district's authority to condemn property necessary for water transportation implicitly includes the power to condemn property necessary for mitigation of the environmental effects caused by the water transportation system. *Ibid.*

In a Wisconsin case cited by Trap Rock, *Mitton v. Wisconsin Department of Transportation,* 179 *Wis.*2d 321, 507 *N.W.*2d 126 (1993), *aff'd,* 184 *Wis.*2d 738, 516 *N.W.*2d 709 (1994), the Court of Appeals held that the Wisconsin Department of Transportation ("DOT") lacked the authority to condemn property consisting of an archaeological site which was outside of the highway right-of-way.

In *Mitton,* the DOT decided to undertake a construction project on a highway. The project was part of the federal aid primary highway system and was being constructed with federal financial assistance. The DOT chose one of several alternatives considered for construction of the bypass. The chosen design crossed the plaintiff's property. Environmental impact analysis subsequently undertaken disclosed that part of the proposed highway would cross over a historic archeological site that was partially located on the plaintiff's property.

Apparently, under state and federal law, the DOT was precluded from disturbing the artifacts on the archaeological site without the permission of state and federal historical agencies. An alternative mitigation plan was eventually accepted by relevant state and federal historic agencies. This plan involved a limited level of recovery of artifacts in the right-of-way itself and the acquisition and preservation of the archaeologic site. The total amount of the

plaintiff's property which was taken was 6.26 acres, one acre of which was necessary for construction of the right of way, and the remainder of which was going to be for the archaeological site. The plaintiff challenged the DOT's condemnation of that property which was intended for the historic preservation.

Among the arguments entertained was the DOT's position that, although the portion of the property taken for archaeological purposes was outside of the actual right-of-way, the property was nonetheless being condemned for "transportation purposes." *Mitton, supra,* 507 *N.W.*2d at 129. Under Section 84.09(1) of Wisconsin's statutes, the DOT was permitted to " 'acquire by gift, devise, purchase or condemnation any lands for establishing, laying out, widening, enlarging, extending, constructing, reconstructing, improving and maintaining highways and other transportation related facilities . . . .' " *Ibid.* This section then refers to these uses as " 'transportation purposes.' " *Ibid.* The DOT argued that "because it was compelled to acquire replacement lands in order to obtain federal approval to continue the project in the chosen corridor, the replacement lands were for transportation related purposes and the DOT had express authority to condemn the land under [the relevant statutory section]." *Mitton, supra,* 507 *N.W.*2d at 129. However, despite this argument, the court concluded that "only the portion of the land needed for the right-of-way was for transportation related purposes, and sec. 84.09 does not provide the DOT with authority to condemn the remainder of the site." *Ibid.*

Significantly, the court noted that

[T]he DOT's argument might be more compelling if the acquisition of the site were required in order to acquire the [plaintiff's] right-of-way. We are not concluding that condemnation of replacement lands is never for transportation purposes. If the DOT establishes that acquisition of replacement lands is the only possible method of obtaining land necessary for transportation purposes, then the replacement lands themselves could be said to be acquired for transportation purposes. However, because the DOT has not established that acquisition of replacement lands was its only alternative, its argument fails.

[*Id.* at 129–30.]

Thus, the court's decision in *Mitton* is clearly limited to the facts presented in that case and distinguishable from the facts presented here. Unlike *Mitton,* the DOT in the instant case demonstrated that it only chose the design alternative that it adopted after the DOT engaged in an extensive review of the other eleven possible alternatives in light of its objectives and goals. Because these other eleven alternatives could not meet the DOT's stated goals, objectives and concerns for the Route 29 Project, they were eliminated as potential alternatives.[4]

Further, it is undisputed that the chosen construction design adversely impacted the shallow water habitat, and consequently, prior to issuance of necessary federal and state permits for construction, the DOT was required to establish a plan for a replacement shallow water habitat. In addition, in choosing the actual site for mitigation, the DOT engaged in an extensive search, as demonstrated in Elkins Green's certifications. Thus, unlike the deficient proofs in *Mitton,* the proofs here demonstrate that the environmental mitigation involving Trap Rock's property was necessary for construction of the Route 29 Project.

Again, while these cases do not have any binding authority over this or any New Jersey court, these cases are instructive on the issue of a condemnor's statutory power to condemn private property for uses which are incidental to actual construction.

When interpreting a Legislative enactment, it is the court's duty to give effect to the language contained within that enactment. At the same time, the court is obliged to give effect to the Legislature's purpose and intent in enacting the statute. If the plain reading of the Legislature's enactment leads to a result contrary to the Legislature's intent, then the court has misinterpreted that

---

[4] Again, the court owes the DOT discretion in the DOT's choice of construction designs. *See Outland, supra,* 326 *N.J.Super.* at 399, 741 *A.2d* 612. Based upon the DOT's representations contained in its certifications in support of this motion, the DOT's choice of design alternative is reasonable. The DOT submits that "Alternative C" was the only design choice which satisfied its goals, objectives and concerns.

statute. In light of all relevant considerations, the court concludes that the DOT has the authority to condemn Trap Rock's property for purposes of environmental mitigation which is incidental to its construction of a limited access highway. A conclusion that the DOT is precluded from condemning property would hold the DOT hostage in the performance of its duties under the Transportation Act and more significantly, would be contrary to what the Legislature intended when it enacted the Transportation Act. Accordingly, the DOT's order to show cause is granted.

Finally, the DOT's motion for an order for physical possession of the subject property pursuant to *N.J.S.A.* 20:3–19 is granted. *N.J.S.A.* 20:3–19 provides, in pertinent part, that

A copy of the declaration of taking and notice of the filing thereof and of the making of the aforesaid deposit, shall be served upon the condemnee and all occupants of the property in accordance with the rules, and proof of such service shall be filed in the action. Thereupon, the right to the immediate and exclusive possession and title to the property described in the declaration of taking shall vest in the condemnor, free and discharged of all right, title, interest and liens of all condemnees without the necessity of further process . . . .

Because the DOT has complied with this section and its prerequisites, the DOT is entitled to immediate possession of Trap Rock's property.